FRANK NAPPA, Respondent, *v.* ERIE RAILROAD COMPANY, Appellant.

**Master and servant — action under Employers' Liability Act —
when cause of injury a detail of work not covered by the act.**

Plaintiff, a freight· handler, was injured while unloading freight in
defendant's freight house as a member of a gang of men working under
a " gang boss." In unloading the freight upon the platform one end
of a " skid " or running board of iron was placed on the floor of the car,
the other on the platform. At the end of the skid which rested on the
platform, it was customary to nail a piece of wood called a cleat to hold
it in place. This was usually, but not always, done by laborers other
than those unloading the freight. Plaintiff, after a brief absence, found
a skid in position and went to work. He did not notice the absence of
the cleat and by reason of its absence the skid slipped and plaintiff was
injured. *Held*, that the skid and cleat were no part of the ways, works
or machinery under the Employers' Liability Act, nor of the safe place to
work at common law, and that the court should have charged defend-
ant's request " that this matter of moving this skid from car to car, and
of securing it by a cleat, was a daily detail.of the work not covered by
the Liability Act, and, therefore, there can be no recovery."

*Nappa* v. *Erie Railroad Co.*, 123 App. Div. 915, reversed.

(Argued March 29, 1909; decided April 6, 1909.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
January 27, 1908, affirming a judgment in favor of plaintiff
entered upon a verdict and an order denying a motion for a
new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Adelbert Moot* and *Helen Z. M. Rodgers* for appellant. The
skid and cleat were not " ways," " works " or " machinery "
within the Employers' Liability Act, nor a place to work under
the common law, and the court erred in submitting the case
to the jury on that theory. ( *Willetts* v. *Watts & Co.*, L. R.
[2 Q. B. D.] 92; *Johnson* v. *B. T. Co.*, 135 Mass. 209; *Moyne-
han* v. *Hills Co.*, 146 Mass. 586; *Bjbjian* v. *W. Rubber Co.*,

164 Mass. 214; *McGiffin* v. *P. S. B. Co.*, L. R. [10 Q. B. D.]
5; *Shea* v. *Wellington*, 163 Mass. 364; *Morris* v. *W. Mfg.
Co.*, 181 Mass. 326.) Subdivision 1 of section 1 of the
Employers' Liability Act, under which this action is brought,
is merely declaratory of the common law in this state, which
does not permit a recovery in this case. (*C. M. & E. Co.* v.
*Mitchell*, 26 Col. 284; *Wilson* v. *L. N. R. Co.*, 85 Ala. 269;
*Hudson* v. *O. S. S. Co.*, 110 N. Y. 625; *Cregan* v. *Marston*,
126 N. Y. 572; *Johnson* v. *B. T. B. Co.*, 135 Mass. 209; *McGee*
v. *B. C. Co.*, 139 Mass. 445; *Harley* v. *B. C. M. Co.*, 142
N. Y. 31; *D'Arcy* v. *L. I. R. R. Co.*, 34 App. Div. 275;
*Agresta* v. *Stevenson*, 112 App. Div. 367; *McCampbell* v.
*C. S. S. Co.*, 144 N. Y. 552; *Loughlin* v. *Brassil*, 187 N. Y.
128; *Rende* v. *N. Y. & T. S. S. Co.*, 187 N. Y. 382; *Hahn*
v. *C. M. O. Co.*, 126 App. Div. 815.)

*Eugene M. Bartlett* for respondent. The skid or running
board was part of the defendant's works, ways or machinery.
(*Seavey* v. *Cent. Ins. Co.*, 11 Mass. 541; *Pierce* v. *George*,
108 Mass. 78; *State* v. *Avery*, 44 Vt. 629; *O'Keefe* v.
*Brownel*, 156 Mass. 133; *Coppithorne* v. *Hardy*, 173 Mass.
400; *Gunn.* v. *N. Y., N. H. & H. Ry. Co.*, 171 Mass. 417;
*U. S. R. R. Co.* v. *Weir*, 96 Ala. 396; *Bromley* v. *C. S. Co.*,
2 Times L. R. 881; *Wood* v. *C. I. Co.*, 8 Times L. R. 376;
*Morrissey* v. *Dayer*, 121 App. Div. 247; *Brouillette* v. *C.
R. R. Co.*, 162 Mass. 198; *L., etc., Ry. Co.* v. *Pearson*, 97
Ala. 211.) The defendant is liable under the Employers'
Liability Act for the neglect of the cooper in failing to prop-
erly secure the skid. (*Bellegard* v. *U. B. & P. Co.*, 90
App. Div. 583.) The defendant is liable under the Employers'
Liability Act for the negligence of its boss or superintendent
in requiring the plaintiff to proceed with his work before the
skid was securely or properly fastened to the platform of the
freight house. (*Gmaehle* v. *Rosenberg*, 178 N. Y. 147;
*Harris* v. *B. M. & E. Works*, 188 N. Y. 141; *Rosin* v. *L.
Mfg. Co.*, 89 App. Div. 245; *Randall* v. *H. Mfg. Co.*, 95
App. Div. 236; *Braunberg* v. *Solomon*, 102 App. Div. 330;

12

*Carlson* v. *U. E. & C. Co.*, 113 App. Div. 371; *Mahoney* v. *N. Y. & W. E. R. R. Co.*, 160 Mass. 573; *Rion* v. *R. G. Co.*, 171 Mass. 162; *Prenible* v. *C. R. M. Co.*, 160 Mass. 131; *McCabe* v. *Shields*, 175 Mass. 438.) The plaintiff made out a complete cause of action at common law irrespective of any liability of the defendant under the Employers' Liability Act. (*O'Brien* v. *B. F. Co.*, 183 N. Y. 317; *Lofrano* v. *N. Y. & Mt. V. W. Co.*, 130 N. Y. 658; *McGovern* v. *C. V. R R. Co.*, 123 N. Y. 281; *Kranz* v. *L. I. R. R. Co.*, 123 N. Y. 1; *Doing* v. *N. Y., O. & W. Ry. Co.*, 151 N. Y. 579; *Dowd* v. *N. Y., O. & W. Ry. Co.*, 170 N. Y. 459.)

Edward T. Bartlett, J. This is a negligence action in which the plaintiff seeks to recover damages for injuries inflicted upon him in an accident happening while in defendant's employ. The action is brought under the Employers' Liability Act.

The plaintiff was an ordinary workman, a freight handler, and had been engaged in that occupation at the place where he was injured for five years or more. The plaintiff worked in the freight house of the defendant situated on Ganson street, in the city of Buffalo. This freight house was 687 feet long and 120 feet wide; one side connected with the boats, the other with the railroad, where there were several parallel tracks. The roof rested upon posts that were about thirteen and one-half feet apart, and between these were rolling doors that could be wound up perpendicularly; a kind of steel shutter. On the side where the tracks were located there was a small projection, or water table, outside of the posts, known as the platform; it was six inches wide. When the rolling door was raised it opened on to the floor of the freight house. The freight cars varied in width, the widest leaving a space of ten inches between the outer edge of the platform and the floor of the car, the narrowest sixteen inches. The car floor was four inches higher than the platform.

There were a large number of men working in the freight house, divided into separate gangs. The plaintiff, at the time

of the accident, belonged to a gang of ten men under a " gang boss." This boss did not hire the men in his gang, but could discharge them if they did not obey orders and do their work; he handled such freight from day to day as directed by his superiors and was in no other way connected with the general management and control of the business · conducted in the freight house, or the men employed therein.

The plaintiff received his injury on the 25th of November, 1904, at about 5 : 30 P. M.; he had been engaged all day with his gang in unloading freight from the cars and placing it in the freight house. In the conduct of this work there was employed a " skid," or running board, about three feet square, made of iron; one end thereof was placed on the floor of the freight car and the other on the platform. It was customary at the end of the skid resting on the platform to nail a piece of wood or board, about five inches long and two inches thick, called a " cleat" to hold it in place. There were several men in and about the freight house called " coopers," whose duty it was, when called upon, to place the cleats in position. These " coopers" were ordinary workmen, holding no other position; they were supplied with hammer, nails and cleats and subject to call when needed. In the event of the " cooper" not responding to the call, cleats were kept along the floor of the freight house within easy access so that any workman could place them in position. On the day of the accident the plaintiff testified that he had worked " in ten, twelve or fifteen cars, unloading freight." It was proved that a car when cleared of its freght was removed and a loaded one took its place. The skid was moved by the workmen from one car to another throughout the day, and was with the trucks and other necessary implements, one of the regular tools employed in the work of unloading cars.

About the time of the accident the plaintiff and his fellow-workmen were engaged in removing barrels of sugar from the car to the freight house. The plaintiff just prior to the accident had absented himself to get a drink of water. On returning he found the skid in position and went to work

immediately, with one foot on the platform and the other on the skid. Very soon thereafter, while handling a barrel of sugar, the skid slipped and plaintiff's leg was caught between the barrel and the platform, inflicting the injury of which complaint is made.

The plaintiff testified that he did not observe, what was the fact, that the cleat was not in position when the accident happened. Considerable evidence was introduced as to who was responsible for the failure to place the cleat in position during the brief absence of the plaintiff. In the view we take of the legal situation this question is immaterial.

As before stated this action was brought under the Employers' Liability Act. The material portions of the notice served, as required by the act, read as follows: " That said injuries were caused by the falling of the platform or skid on which said Frank Nappa was then standing, causing him to fall and precipitating a barrel of sugar upon him, and that the falling of said platform or skid was caused by the unsafe and improper manner in which it was placed and secured, and that said platform or skid was furnished by you and your superintendent as the way and place for said Frank Nappa to use in his work and that it was the duty of you and your superintendent to have provided a safe and proper way and place for said Frank Nappa to work. This you and your superintendent neglected to do and you are hereby notified that the said Frank Nappa has a claim against you for five thousand dollars ($5,000.00) for the injuries sustained by him, under the statutes in such cases made and provided, and by reason of such negligence as aforesaid."

If this case is deemed to have been decided under the Employers' Liability Act (Laws of 1902, chap. 600), the provision of section 1, subdivision 1, is material. The employer is made liable where the employee is in the exercise of due care and diligence at the time of the accident.

(Subdivision 1.) " By reason of any defect in the condition of the ways, works or machinery connected with or used in the business of the employer which arose from or had not

been discovered or remedied owing to the negligence of the employer or of any person in the service of the employer and entrusted by him with the duty of seeing that the ways, works or machinery were in proper condition."

It is argued by the counsel for defendant that section 1, subdivision 1, of the Employers' Liability Act, under which this action is brought, is merely declaratory of the common law in this state. The counsel for plaintiff states in his brief that it may be conceded that the Employers' Liability Act of this state makes no change in the common law with respect to the physical conditions or acts which create a liability or out of which a liability may arise. It follows that the cases in this and other jurisdictions prior to the enactment of the Employers' Liability Act are applicable as to the liability of the defendant.

The question of law presented upon the undisputed facts is as to whether the moving of the skid from car to car and securing it with the cleat was a detail of the work or a part of the ways, works or machinery under the Employers' Liability Act. The trial judge, in charging the jury, read from the act in question and stated it was for their guidance in the disposition of the case, calling their attention particularly to section 1, subdivision 1. He then said : " I charge you in the first place, as a proposition of law, that the skid and the floor, the freight house and the cleat which was usually employed to secure the skid to prevent it from slipping were all appliances or ways falling within the designation of the act. * * * In other words, it is for you to determine whether or not there was negligence on the part of the defendant or of its employees in not securing the skid by a cleat at its foot * * * "

The counsel for defendant duly and specifically excepted to this charge as made. He also requested the court to charge as follows : " I ask your Honor to charge the jury further that this matter of moving this skid from car to car, and of securing it by a cleat, was a daily detail of the work not covered by the Liability Act, and, therefore, there can be no recovery

in this action.   The Court: That I decline and give you an exception."

In the view we entertain of this case, the other requests made and exceptions taken by counsel for defendant it is unnecessary to consider.

We are of opinion that the skid and cleat, moved by the workmen from car to car, were no part of the ways, works or machinery under the Employers' Liability Act, nor of the safe place to work at common law.   They were a part of the regular tools and appliances furnished to the freight handlers, and if one of them was injured by the negligent act of another in using the same, it would be one of the risks of the employment, imposing no liability upon the master.

Lord Esher, Master of the Rolls, in *Willetts* v. *Watt & Company* (L. R. [2 Q. B. Div. 1892] 92, 98) thus defines the word "way," as used in the English Employers' Liability Act: "The course which a workman would in ordinary circumstances take in order to go from one part of a shop, where a part of the business is done, to another part where business is done, when the business of the employer requires him to do so, must be regarded as a 'way' within the meaning of the statute."

The skid in the case at bar is not placed in position for workmen to walk over from the floor of the car to the floor of the freight house; it is as an incline over which to allow articles of freight to slide or roll, guided, indeed, by the freight handler, who stands with one foot on the platform and the other on the side of the skid.   The definition of Lord Esher above quoted renders the meaning of the word "way" clear and satisfactory.   A workman in a large manufacturing establishment being called upon, in the discharge of his duties, to pass from one portion of the building to another, possibly through places that are ill-lighted, is entitled to have the place or "way" over which he is bound to pass, safe.   It seems an unreasonable and unnatural construction to hold that an ordinary skid, used in unloading freight cars, a mere tool or implement, can be regarded under the statute as a "way."

In *Hudson* v. *Ocean Steamship Co. of Savannah* (110 N. Y. 625, 626) it was held that where the duty resting upon a master of providing for his servant adequate and safe appliances, and such as are usual in the business in which the servant is employed has been performed, the servant takes all the risk involved in the work and of his own fellow-servant's negligence. Judge GRAY said : " The proofs showed the ' skid ' to be in good order, and the slipping of the shore end was caused by some omission of those engaged at work to attend to its fastenings ; or the fall may have been caused by the swell of some moving vessel. No fault or neglect was shown on defendant's part. The principle upon which actions are allowed against a master by his servant is the obligation resting upon the former to provide adequate and safe appliances, and such as are usual in the particular business in which the servant is employed. That is a duty implied from their contract, and failure of the master in that duty renders him responsible to his servant for injuries occurring. But if the master has performed his duty in that respect, the servant takes all the risks involved in the work in which he is engaged and of his own and his fellow-servants' negligence."

In *Cregan* v. *Marston* (126 N. Y. 568, 572) Judge FINCH states : " It is undoubtedly true, as we have often said, that it is the duty of the master to keep a machine or appliance in order, and that he cannot delegate the duty so as to escape responsibility. But that is a general rule and has its qualifications and limitations. One of those is that it is not the master's duty to repair defects arising in the daily use of the appliance, for which proper and suitable materials are supplied, and which may easily be remedied by the workmen, and are not of a permanent character, or requiring the help of skilled mechanics."

The learned judge cites in this connection *McGee* v. *Boston Cordage Co.* (139 Mass. 445) ; *Webber* v. *Piper* (109 N. Y. 496) ; *Johnson* v. *Boston Towboat Co.* (135 Mass. 209). (See, also, *Harley* v. *Buffalo Car Mfg. Co.*, 142 N. Y. 31.)

In *McCampbell* v. *Cunard Steamship Co.* (144 N. Y. 552) it

appeared that the plaintiff, an experienced longshoreman, was employed by the defendant company to assist in unloading one of its steamers. A skid extended from the steamer to the dock; this was placed in position by other longshoremen and tied to a "mouthpiece," so called, on the dock by lanyards so as to permit the skid and mouthpiece to move back and forth with the movements of the vessel. Plaintiff went up the skid on to the deck with the truck, at which time the skid and mouthpiece were in apparent position, but on his return with the loaded truck because of their not being securely tied together they had separated five or six inches. The wheels of the truck dropped into the opening throwing out the load which fell upon the plaintiff. · No complaint was made except as to the improper fastenings of the skid to the mouthpiece. Defendant's counsel requested, but the court refused to charge, that " if defendant furnished suitable appliances for securing the mouthpiece to the skid and the injury occurred because the mouthpiece was not properly secured, the plaintiff cannot recover." This court held that the refusal to so charge was error ; that if this work was improperly done it was the negligent act of plaintiff's co-employees, and that the question was not affected by the fact that the plaintiff was not present when the skid and mouthpiece were rigged.

The principle established by these authorities and others that might be cited is not embraced within or affected by the Employers' Liability Act. The defendant was entitled to have the court charge, as his counsel in substance requested, that the use of the skid and cleat was a detail of the work and not covered by the Employers' Liability Act.

The judgments of the trial court and Appellate Division should be reversed and a new trial ordered, with costs to the appellant in all the courts to abide the event.

CHASE, J. (dissenting). I think the record shows that the defendant assumed the duty of placing and securing the short platform to make the " way " from each car. The " gang " of which plaintiff was a member did not make the " way."

On the evidence the jury were authorized to find that the accident was caused by the negligence of a person in the service of the employer and intrusted by him with the duty of seeing that such " way " was in proper condition.

CULLEN, Ch. J., GRAY, HAIGHT and WILLARD BARTLETT, JJ., concur with EDWARD T. BARTLETT, J.; CHASE, J., reads dissenting memorandum ; VANN, J., not sitting.

Judgments reversed, etc.