### CIMMER v. MONTGOMERY BROS. & CO.

(Supreme Court, Appellate Division, Fourth Department. March 6, 1912.)

1. MASTER AND SERVANT (§ 219*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—SAFE PLACE TO WORK—OBVIOUS DANGER.

Where stepping boards used in piling lumber, were obviously insecure, and a workman in climbing to the top to go to work at the direction of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

his foreman placed his hands and feet thereon, and was injured by the tipping over of the boards, he has no ground of recovery against the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 610–624; Dec. Dig. § 219.*]

2. MASTER AND SERVANT (§ 177*)—INJURY TO SERVANT—NEGLIGENCE OF FELLOW SERVANT.

A master is not liable for injuries to a servant received while climbing to the top of a lumber pile to get to his work, which were caused by the negligence of another servant already on top of the pile.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 307, 352, 353; Dec. Dig. § 177.*]

3. MASTER AND SERVANT (§ 155*)—INJURY TO SERVANT — SAFE PLACE TO WORK.

Where the condition of stepping boards on top of a lumber pile was so obviously dangerous as to be apparent to any one going upon the pile, there was no duty of a master to warn a servant who had been at work thereon and had started to climb back on the pile to go to work again after a short period.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 310; Dec. Dig. § 155.*]

Spring, J., dissenting.

Appeal from Trial Term, Erie County.

Action by Frank Cimmer against Montgomery Bros. & Co. From a judgment for defendant, and an order denying a motion for new trial, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

M. W. Casey, for appellant.
Clinton B. Gibbs, for respondent.

KRUSE, J. The plaintiff worked for the defendant in a lumber yard. He fell from a lumber pile, and was hurt. He seeks to hold the defendant liable for his injuries. At the close of all the evidence, a verdict was directed for the defendant, and the plaintiff appeals.

Three men were engaged in piling lumber, consisting of inch boards, 4 inches wide, and from 14 to 18 feet long. One man was on top of the pile, another, the plaintiff, stood on a temporary platform at the face of the pile, and the other was on the ground. The man on the ground handed the boards to the plaintiff, who, in turn, passed them to the man on top of the pile. Two of these boards were laid side by side, crossways of the pile, every 18 inches or 2 feet as the piling progressed upwards, with the ends projecting about 18 inches beyond the side of the pile on the south side, serving as means for the men to get on top of the pile. On the morning of the accident the three men were thus at work. It came half past 9 o'clock. The whistle blew, and they stopped their work. It was customary to stop five minutes, at this hour, for lunch. After lunch, the plaintiff asked the foreman or assistant superintendent where he should work. He was told to go up on the pile and work on the scaffold, as before. The lumber was piled in courses, each course consisting of a tier of 12 boards (some of the witnesses say 6 boards), one on top

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes·

of the other, the tiers laid side by side on three cross pieces or boards, one at the face of the pile, another at the middle, and another near the end, laid across the width of the pile. The top tier had been commenced, but not finished. Two stepping boards had been laid crossways of the pile on top, but nothing had been laid on them to hold them down, as plaintiff states, save one tier of 12 boards on the south side of the pile, where the stepping boards projected. The plaintiff used the projecting stepping boards to get to the top of the pile, intending to drop down from the pile onto the scaffold, as he had done before. When he reached the second stepping boards from the top, he put his hand on the end of the projecting boards on top of the pile, raised one foot, put it on the top boards also, and was raising up the second foot, as he says, when the top boards tipped up, and he fell a distance of about 23 or 24 feet, and was hurt.

[1] Plaintiff says that he was not told to be careful, and did not know that there was but one tier of boards on top of these projecting boards; but that was plainly to be seen before he took hold of, or stepped on them. The condition was so obvious that he should have known it, and the danger so apparent that he is chargeable, as it seems to me, with knowing and appreciating the danger of attempting to rest his weight on the end of the boards, and I think in so doing he was himself at fault.

[2, 3] I do not see how the defendant can be held liable for negligence, either at common law or under the Employer's Liability Act. If there was any carelessness upon the part of the man on top of the pile (and I do not think there was), it was the negligence of a fellow servant; and as regards the matter of warning, even if the foreman knew of the condition of the top of the pile and of the looseness of the stepping boards, it would hardly seem that it was necessary to call special attention to what would be so perfectly apparent to any one in going upon the pile. As the law now stands, I am unable to see that the defendant is liable in any view of the evidence.

I think the case was correctly disposed of by directing a verdict for the defendant, and that the judgment entered thereon should be affirmed.

Judgment and order affirmed, with costs. All concur, except SPRING, J., who dissents in an opinion.

SPRING, J. (dissenting). The action is negligence by an employé against his employer, a domestic corporation owning a lumber yard in the city of Buffalo, and a recovery is sought in pursuance of the provisions of the Employer's Liability Act of the Labor Law (Consol. Laws 1909, c. 31, §§ 200–204), and the common law as well.

The plaintiff had been in the service of the defendant in its lumber yard since the 1st day of June, 1909, and was assisting in piling lumber in the forenoon of the 17th of that month. The pile, by the north side of which he was at work, was up nearly 25 feet and something like 16 to 20 feet each way across. The plaintiff was on a temporary scaffold, and the boards were delivered to him from a truck, and he handed them to Kijanka, who was on top of the pile, and who piled

them as they were handed up to him. The boards were from 14 to 18 feet in length, 4 inches wide, and an inch thick, and Kijanka commenced in piling at one side of the pile, placing 12 boards on top of each other, and then another similar tier alongside until he extended these tiers entirely across the pile. On top of each course of 12 boards cross-pieces were placed. As the pile went up, Kijanka extended out of the southerly side of the pile about 18 inches, 2 of the boards laid side by side for steps, and the long ends of these boards reached into the pile 10 or 12 feet, and were held in place and from tipping by the tiers of boards as they were piled, and this stairway construction continued until the time of the accident. These sets of projecting boards were intended for steps, and were about 18 inches apart, and the only means of access to the top of the pile or to the scaffold on which the plaintiff was at work at the time he was injured.

On the morning of the 17th the plaintiff was directed by Newman, the superintendent of the defendant, to go up this stairway at the south side of the pile, and hand the boards from the scaffold to Kijanka. He did so, and the steps were firm and adequate, and, when he reached the upper step, the pile was level and the boards of the lumber pile held the top step boards from tipping down. He continued handing up the boards to Kijanka until about 9:30 o'clock in the forenoon, and the top of the pile was then seven or eight feet above the scaffold on which he was working. The workmen then suspended work for five minutes for luncheon, the plaintiff letting himself down to the truck. Kijanka had started piling boards across the southerly side of the pile, and had one tier of 12 boards and 3 or 4 boards by the side of it for the second tier. Before commencing these tiers, he had extended 2 boards out for about 18 inches for another step in the series. These boards extended well across the pile, and there were no boards to hold them, except the tiers immediately adjacent to them, and any substantial weight on this upper step would inevitably cause it to fall, and would necessarily tip over the boards laid along on top of them. Kijanka testified that he knew the top step was not safe to use as the boards composing it were not held down, but he further stated that he had warned the plaintiff of the danger, which the latter explicitly denied. The plaintiff did not assist in laying the boards in place on the pile, and was not familiar with the manner in which the work was done. His work, in so far as it related to the lumber pile, was to hand up the boards. He was a common laborer, and did not speak English. Kijanka went down these steps for his luncheon, and up again after finishing it. The plaintiff afterwards went up the steps. The foreman was near him. The plaintiff testified:

"Newman was standing and looking all the time at the pile. Newman saw me going up this pile. He was walking from one side of the machine to the other and looking at the pile."

As plaintiff reached the top, he put one foot on the upper step, and, with his right hand on the boards, attempted to make the last climb when the boards of the step tipped down by his weight and the

tiers of boards as well, and all were precipitated to the ground 25 feet below, and the plaintiff suffered very serious injuries.

Before the day of the accident he had never climbed steps like these by the side of the lumber pile. On previous days he made the ascent on boards placed in the space separating two contiguous piles, and the steps were firmly held in position by the boards of the two piles into which they were extended. He testified that he was not advised of the danger of stepping on the top step, nor of the fact that the tiers of boards on top of the pile did not extend across it, nor that there was no weight to hold down the steps in order to prevent them from falling. He assumed, as he had a right to do, that they were safe for him to ascend. He was obeying the direction of the foreman who was in close proximity to him when he was climbing up the stairway, which at best made a precarious means of ascent, and close attention on his part was required as there was no railing on the outer side of the steps. The defendant provided the way for the plaintiff to reach his place of work, and the duty was imposed upon it to make this means of access reasonably safe, and the obligation was not one it could delegate to Kijanka. Whoever made the way of approach represented the defendant, if made by its authority or with its knowledge of the purpose for which it was to be used, as the proof shows in this case.

Within the scope of the Employer's Liability Act this approach was a part of the place provided for him to carry on his work. In Kirby v. Montgomery Bros. & Co., 197 N. Y. 27, at page 31, 90 N. E. 52, at page 53, the court, in commenting on a walk which the defendant had provided for its workmen and which proved to be inadequate, used this language:

"Acting in the line of his duty, the plaintiff was walking from one part of the building to another over a walk provided by the defendant for that purpose, and under these circumstances the law regards the walk as a place furnished by the defendant for his servants to work in. If the jury could have found that the walk was unsafe and that the defendant knew or should have known it, the plaintiff had a right to recover damages for the injuries he sustained, provided he was not himself guilty of negligence."

In Nappa v. Erie Railroad Company, 195 N. Y. 176, at page 182, 88 N. E. 30, at page 32 (21 L. R. A. [N. S.] 96), the court cites approvingly the following definition of "way" as used in the English Employer's Liability Act, and as given in Willetts v. Watt & Co. (L. R. [2 Q. B. Div. 1892] 92, 98):

"The course which a workman would in ordinary circumstances take in order to go from one part of a shop, where a part of the business is done, to another part where business is done, when the business of the employer requires him to do so, must be regarded as a 'way' within the meaning of the statute."

The counsel for the defendant cites many authorities to the effect that the employer is not liable where the defective condition causing the injuries was due to the manner in which the work was prosecuted. Citrone v. O'Rourke Engineering & Construction Co., 188 N. Y. 339, 80 N. E. 1092, 19 L. R. A. (N. S.) 340; Stourbridge v. Brooklyn City R. R. Co., 9 App. Div. 129, 41 N. Y. Supp. 128; O'Connell v.

Clark, 22 App. Div. 466, 48 N. Y. Supp. 474. These authorities proceed primarily upon the ground that the plaintiff is in a measure resonsible for the constant progress of the work and the danger grows out of its performance in its normal advance and development. He knows the dangerous condition and contributes to, or is connected with, it; and the constant changing in the place brings about the unsafe condition. In other words, the employé assumes the risk of an obviously dangerous condition, and that is the gist of the rule exonerating the employer. The way here constructed was not within the view of the plaintiff, and he had no part in its making. It was an independent·method provided for a special purpose, and was not the necessary result of the progress of the lumber piling. A ladder might have been provided or other means adopted of reaching the top of the pile or scaffold. The piling of the lumber in and of itself did not make the stairway. In excavating a tunnel, or in blasting in a quarry, the place where the men are at work invariably changes as the work progresses, and the changes are made by the men in the ordinary prosecution of their employment.

I doubt, therefore, whether within the doctrine of the common law the obligation imposed upon the defendant to provide a reasonably safe place for the plaintiff is abrogated by the exception or limitation relieving the master of liability where the place is the natural result of the pursuit of the work in which the servant is engaged. Passing that, the Employer's Liability Act has effected a radical modification of the rule of the common law adverted to, and the courts of this state in disposing of actions brought under the common law since this enactment are careful to note the change. Henry v. Hudson & Manhattan R. R. Co., 201 N. Y. 140, 142, 94 N. E. 623; Mullin v. Genesee Co. El. L. P. & Gas Co., 202 N. Y. 275, 276, et seq., 95 N. E. 689. Within the provisions of that act the employer is made liable to his employé for injury caused by any defect in the "condition of the ways, works, machinery or plant" connected with the business of the employer and attributable to his negligence or of any one in his employ intrusted with the duty of seeing that the ways, etc., are in proper condition. Kijanka erected the pile and made the stairway under the personal direction and within the oversight of Newman, the defendant's superintendent in immediate charge of the work. The defendant is responsible for the access which was provided for the plaintiff to reach the work assigned him to perform, and this was a "way" within the meaning of the statute. If this was constructed as the work progressed, the defendant is not relieved on that account, for it was the way furnished during the performance of that particular work. It was not even a temporary appliance or way for it was to continue at least as long as the making of that pile of lumber continued. The length of time which a way exists is not necessarily to determine its character. One kind of work may require years in its performance, and another a week, and yet the same rules may be applicable in determining the liability of the employer to his workmen.

The plaintiff was not guilty of contributory negligence as matter of law. In his passage over the steps two hours earlier at the com-

mand of Newman he had found them secure. At the time of the accident he was ascending in the presence of the superintendent and following Kijanka, who had made the steps, and who, we may assume, was competent for that purpose. The projection of one and one-half feet made a narrow space for a stocky man, as the plaintiff was; and the rise of one and one-half feet for each step called for caution in observing and measuring his course upward. He looked ahead of him, not realizing that the top step was a veritable danger trap. To be sure, he did not look upon the pile over the tier of boards next to him. He had received no warning that the top step was unsafe to step on. He was cautiously pursuing the course which he deemed proper in order to prevent him from falling 20 or 25 feet to the ground because of the perils which were obvious and they absorbed his attention. Negligence cannot, therefore, be imputed to him as matter of law merely because he did not look over the top of the pile when he had no reason to apprehend that the steps were not securely fastened. Had he looked on the pile he might not have been apprised of the fact that the boards comprising the top step were not held in place for he did not know how these steps were constructed or held in place. His conduct in the light of the circumstances disclosed, and also the question of assumption of risk, were for the jury to determine. Clark v. N. Y. C. & H. R. R. Co., 191 N. Y. 416, 420, 84 N. E. 397; Knezevich v. Bush Terminal Co., 127 App. Div. 54, 111 N. Y. Supp. 255.

I think the case should have been submitted to the jury.