## WILLIAM HAMM v. ROCKWOOD SPRINKLER COMPANY, A CORPORATION.

Argued November 5, 1915—Decided April 13, 1916.

1. The word "plant" used in connection with the words "ways, works, machinery or plant" in chapter 352 of the laws of 1910 of the State of New York, known as the labor laws, has been construed by the courts of that state to include everything other than supplies and stock in trade necessary and requisite to the carrying on of a business, and a wrench furnished by an employer to an employe to be used by him in his work for the employer is a part of the employer's plant in performing such work.

2. Where plaintiff was injured while standing on a narrow beam in the prosecution of work for his employer, while necessarily using a wrench which gave way because of its defective and worn condition, causing the plaintiff to lose his footing and fall, the plaintiff was not debarred from recovery on the ground of assumption of risk—(1) because the risk was not inherent from the nature of the business, and (2) because plaintiff notified a person superior to himself and under whom he worked of the defect in the wrench within a reasonable time after he discovered its defective condition.

3. Under the New York Labor law before referred to, contributory negligence of a plaintiff must be pleaded and proved by a defendant, and the defendant in this suit pleaded that plaintiff did negligently stand upon a beam or beams of a width of not more than one and one-quarter inches, and performed his work in a position which he knew to be dangerous. The evidence showed that the plaintiff was necessarily standing on the place provided for him by the defendant, and from aught that appeared it was a safe place for him to stand, and whether he used that degree of care that an ordinarily cautious man would have used under similar circumstances was a question for the jury.

4. The fact that the contract of hiring was made in New York and the work performed and the plaintiff injured in that state, and that the defendant, though a foreign corporation, was licensed to do business in this state, of which plaintiff was also a resident, did not limit the plaintiff to seek compensation for his injuries under the Workmen's Compensation act of this state.

5. Plaintiff was thirty-seven years of age when injured and his earning capacity was $6 a day. The injury received was extremely painful and very serious; he had sustained a loss in wages, medical attendance, &c., of $3,000 at the time of the trial, and was not fully recovered, and he would require further medical treatment of a painful character for a year and possibly for several years. *Held,* that a verdict of $7,500 was not excessive.

On rule to show cause.

Before Justices Parker, Minturn and Kalisch.

For the plaintiff, *Abraham Levitan.*

For the defendant, *M. Casewell Heine.*

The opinion of the court was delivered by

Kalisch, J. The plaintiff was employed by the defendant corporation as pipefitter. The contract was made in New

York City and the work was to be performed there. The negligence charged against the defendant corporation was the furnishing by it of a defective wrench to the plaintiff to be used by him in connecting certain pipes in a tank house erected on the roof of a certain building in New York City, so that the plaintiff, who was required to stand on beams not exceeding one and one-quarter inches in width, in the prosecution of his work and while necessarily using the wrench, through the wrench giving way because of its defective and worn condition, lost his footing and fell astride of a beam, causing him serious and permanent injuries.

The plaintiff is a resident of New Jersey and the defendant is a foreign corporation with a certificate filed in this state.

The plaintiff brought his action in this court and the case was tried in the Hudson Circuit, resulting in a verdict for the plaintiff for $7,500.

The plaintiff's action was based on article 14, chapter 36 of the Consolidated Laws of 1908 of the State of New York, as amended by sections 200, 201 and 202*A* of chapter 352 of the laws of 1910 of the State of New York, known as the labor laws, which was introduced in evidence by the plaintiff.

The defendant obtained a rule to show cause without reserving exceptions.

The first ground relied on by the defendant for setting aside the verdict is that there was no proof of the defendant's negligence under the New York Labor law.

Section 200 of chapter 352 of the New York Labor law (1910), provides: "When personal injury is caused to an employee who is himself in the exercise of due care and diligence at the time:

"1. By reason of any defect in the condition of the ways, works, machinery or plant, connected with or used in the business of the employer which arose from or had not been discovered or remedied owing to the negligence of the employer or any person in the service of the employer, and intrusted by him with the duty of seeing that the ways, works, machinery or plant were in proper condition;

"2. By reason of the negligence of any person in the service of the employer intrusted with any superintendence or by reason of the negligence of any person intrusted with authority to direct, control or command any employee in the performance of the duty of such employee."

It is not denied that the wrench was defective. The insistence of counsel for defendant is that there is no direct allegation in the complaint that the defendant furnished defective ways, works, machinery or plant and that the furnishing of the plaintiff with a defective wrench does not bring it within the scope of ways, works, machinery or plant.

The plaintiff's claim rests upon the assertion that a wrench was a part of the defendant's plant of pipefitting, and that if the wrench supplied was defective, it was a defect in the condition of such plant.

The statutory meaning of the word "plant" was discussed and settled by the Court of Appeals of the State of New York, in an opinion by Judge Chase in *Wiley* v. *Solvey Process Co.,* 215 *N. Y.* 584; 109 *N. E. Rep.* 606. In that case the question mooted was whether the failure to provide a workman with a punch in the work that he was doing was a defect in the condition of the plant, and the court held that it was. The reasoning of Judge Chase (on *p.* 608) of *N. E. Rep., supra,* in construing the statutory meaning of the word "plant" is instructive and illuminating. He says: "The words used in the act of 1902, namely, 'ways, works and machinery,' did not include everything furnished to the employe for his use in the business of the employer. *Nappa* v. *Erie Railroad Co.,* 195 *N. Y.* 176, 182; 88 *N. E. Rep.* 30; 21 *L. R. A. (N. S.)* 96; *Heiser* v. *Cincinnati Abbattoir Co.,* 141 *App. Div.* 400; 126 *N. Y. Sup.* 265; *Id.;* 205 *N. Y.* 379, 382; 98 *N. E. Rep.* 747. It probably did not include hand tools, although such tools, or at least many of them, are absolutely essential to constitute a plant. The word 'plant' was added to that section by chapter 352 of the laws of 1910. It cannot be reasonably doubted that the change was made for the benefit of the employes and to make certain that everything reasonably required for the safety of an employe

in the conduct of the master's business would be included in the statute by the use of the word 'plant.' The purpose of the amendment of 1910 was to include among the things required of the employer something not included in the words of the act as it existed prior to the amendment. It was made with knowledge of the construction given to the act as it existed prior to 1910 and it seems to have been intended to make the statute broad, liberal and comprehensive.

"The word 'plant' in its ordinary acceptation, when used in connection with and relating to a business, includes everything other than supplies and stock in trade necessary and requisite to the carrying on of the business. It includes in the language of Lord Justice Lindley (*Yarmouth* v. *France, L. R.,* 19 *Q. B. Div.* 647, 658) : 'Whatever apparatus is used by a business man for carrying on his business—not his stock in trade which he buys or makes for sale—but all goods and tools fixed or movable, live or dead, which he keeps for permanent employment in his business.' "

This statutory construction was followed in the present case by the learned trial judge who charged the jury, in substance, and properly so, that a wrench, under the New York Labor law, is a part of the employer's plant when necessarily used in connection with the performance of the work in the master's business.

The defendant's duty was to use reasonable care to supply the plaintiff with a wrench in reasonably good condition and reasonably fit for the work the plaintiff was called upon to perform and to use reasonable care that it should be kept in reasonably good repair and reasonably fit for the purpose for which it was being used. The failure of the master to use reasonable care in either respect constituted negligent conduct on its part to keep its plant in proper condition.

That the tool was defective is conceded. It is not denied that the defect in the wrench was obvious. The contention of counsel for defendant is that because the defect in the wrench was an obvious one, the plaintiff in continuing to work with it after knowledge of the defect assumed all risk of injury arising from the use of it. Ordinarily, under the common

law, this would be so. But even at common law there may be exceptional circumstances which would preclude the application of the general rule, as, in case, where, though the risk is obvious, the master may still be liable for injuries to the servant if he has promised to amend the defect or make the place safe, and the servant continues the work in reliance upon the promise. *Dowd* v. *Erie Railroad Co.*, *70 N. J. L.* 451; *Dunkerly* v. *Webendorfer Machine Co.*, *71 Id.* 60; *Barr* v. *Penn Carbon Manifold Co.*, 81 *Id.* 712.

The matter is, however, fully controlled by the New York Labor law, which provides, in substance, that the employe does not assume any risk which springs from the employer's negligence, but solely such risks as are inherent in the nature of the business which remain after the employer has exercised due care in providing for the safety of his employes and has complied with the laws affecting or regulating such business or occupation for the greater safety of the employes.

The statute further provides that when a personal injury results owing to any cause, including open and visible defects. for which the employer would be liable but for the hitherto available defence of assumption of risk by the employe, the fact that the employe continued in the service of the employer in the same place and course of employment after the discovery by such employe, or after he had been informed of the danger of personal injury therefrom, shall not be, as a matter of fact, or as a matter of law, an assumption of risk of injury therefrom, but an employe, or his legal representative, shall not be entitled under this article to any right of compensation or remedy against the employer in any case where such employe knew of the defect or negligence which caused the injury, and failed within a reasonable time to give, or cause to be given, information thereof to the employer, or to some person superior to himself, in the service of the employer, or who had intrusted to him some superintendence, unless it shall appear on the trial that such defects or negligence was known to such employer, or superior person, prior to such injuries to the employe; or unless such

defect could have been discovered by such employer by rea-
sonable and proper care, tests and inspection.

The plain reading of the statute makes it manifest that the
contention of counsel, that the plaintiff was debarred from
a recovery because he continued in the employ of the defend-
ant working with a wrench after he knew that it was de-
fective, and hence, must be held to have assumed the risk, is
without substance.

In the first place, it is clear that the risk was one not aris-
ing out of the inherent nature of the business, but, obviously,
from the neglect of the defendant to either furnish a wrench
in good repair, in the first instance, to the plaintiff with
which he was to do the work, or to use reasonable care that
the wrench so provided should be maintained in reasonably
good repair and reasonably fit for the work to be performed.

Secondly, it appears that the plaintiff within a reasonable
time after discovering the defect in the wrench did, in accord-
ance with the statute, notify the person superior to himself
and under whose direction he performed the work that the
wrench was defective.

In that regard the plaintiff was supported by the testimony
of a fellow-servant who was present when the plaintiff com-
plained of the defective wrench, to the person in charge of the
work.   It is true that there was a conflict in the testimony
on the question whether such notice was given.   The claim
of the defendant in that respect is that the jury having found
a verdict in favor of the plaintiff virtually found that such
notice was given and that this was against the clear weight of
the evidence.   There is no merit in this contention.   There
was proof on the plaintiff's case that such notice was given.
The conflict in the testimony simply raised a question of the
credibility of the witnesses, which was pre-eminently for the
jury to consider and pass upon, and we cannot say that the
result reached by the jury clearly indicates mistake, prejudice,
partiality or passion on their part.

The further contention made by the defendant is that the
plaintiff was guilty of negligence contributing to his injury,
and that the verdict was contrary to the evidence and the

weight of the evidence, in that the plaintiff was found to be free from contributory negligence.

The New York Labor law provides that on the trial of any action brought by an employe　\*　\*　\*　to recover damages for negligence arising out of and in the course of such employment, contributory negligence of the injured employe should be a defence to be so pleaded and proved by the defendant.

The contributory negligence of the plaintiff, as pleaded by the defendant, was that the plaintiff did negligently and carelessly stand upon certain beam or beams, the combined width of which did not exceed one and one-quarter inches, and by performing his work in a position which he knew to be dangerous. It also pleaded the use of a defective tool as contributory negligence of the plaintiff.

We have already discussed that phase of the case which related to the use of defective tools in dealing with the question of the assumption of risk, and disposed of it on the Labor law of the State of New York as construed by the Court of Appeals of that state.

As to the assertion that the plaintiff was guilty of contributory negligence on account of the nature of the place where he was standing at the time he met with his injury, counsel for defendant has not pointed out to us in his brief any testimony in the case, nor have we been able to discover any, to the effect that the plaintiff, while performing his work, at the time of the injury, was negligently standing on the beams. The proof shows that he was necessarily standing on the place provided for him by the defendant and where his work called him to be, and from aught that appears in the case it was a safe place to stand upon, and we are unable to find anything in that fact or circumstance which properly gives rise to any reasonable inference that he was not acting at that time with that degree of prudence as an ordinary cautious man would have acted under similar circumstances. Whether he did so or not was a question of fact which the learned trial judge very properly submitted to the jury for decision.

The argument next advanced by counsel for defendant is that the proximate cause of the injury to the plaintiff was not the slipping of the defective wrench, but his standing upon the narrow beams, and that if the defendant had been standing upon a solid flooring, the plaintiff would not have been injured. But that is purely a *non sequitur*—a speculative conjecture. The tool was defective which caused it to slip and the plaintiff to lose his balance. It was, at least, open to the jury so to find, and, in consequence, that the efficient cause of the plaintiff losing his balance was the slipping of the defective wrench.

In *Menger* v. *Laur*, 55 *N. J. L.* 205, Mr. Justice Depue pointed out, with his characteristic ability and clearness, that where the faulty act of the plaintiff simply presents the condition under which the injury was received, and was not in a legal sense a contributory cause thereof, the sole question will be whether, under the circumstances and in the situation in which the injury was received, it was due to the defendant's negligence. *Erie Railroad Co.* v. *Ball*, 53 *N. J. L.* 283; *Watson* v. *Camden and Atlantic Railroad Co.*, 55 *Id.* 125.

The next ground urged against the validity of the verdict by counsel for defendant is that the court was without jurisdiction to entertain the action, because it was one brought by an employe against his employer in a court of this state, for the recovery of damages for personal injuries received by the employe in an accident in the course of and arising out of his employment.

The basis of this contention is that though the contract of hiring was made in New York, and the work performed and the plaintiff injured there, nevertheless, since it appeared that at the time the contract was made in the city of New York, the defendant, though a foreign corporation, was licensed to do business in this state, and the plaintiff was a resident of this state, hence, the plaintiff's only remedy, in seeking redress in a forum of this state, was limited to compensation under the Workmen's Compensation act. The mere statement of the proposition, under well-recognized legal principles, reveals it puerility. Neither the case of *American*

*Radiator Co.* v. *Rogge,* 86 *N. J. L.* 436, nor the case of *Rounsaville* v. *Central Railroad Co.,* 87 *Id.* 371 (cited by counsel for defendant in support of the proposition), lends any color to the novel theory suggested.

Lastly, it is urged that the damages awarded are excessive. We do not think so. The plaintiff was thirty-seven years of age at the time he was injured. His earning capacity was $6 per day. The injury he received was not only an excruciatingly painful one, but was very serious, threatening him with impotency. At the time of the trial the plaintiff's loss in wages, medical attendance, medicines, &c., amounted to about $3,000. He was not then entirely restored to health and still unable to follow his trade. There was proof that the nature of his injury was such that he would require medical attention and undergo treatment once a week of a painful character for a year, and, possibly, several years. Under these circumstances, we cannot say that the award of $7,500 was unreasonable.

The rule to show cause will be discharged, with costs.