I think therefore the defendant was in default, and plaintiff was entitled to enter the judgment, and the judgment should not be vacated until the amount actually due the plaintiff has been paid.

---

## McKEON v. PROCTOR & GAMBLE MFG. CO.

(Supreme Court, Appellate Division, Second Department. May 29, 1914.)

1. MASTER AND SERVANT (§ 107*)—INJURIES TO SERVANT.

Chain tongs, which broke, causing an injury to a servant, are part of the employer's plant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*]

2. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—ACTIONS—EVIDENCE—SUFFICIENCY.

In an action by a servant injured upon the breaking of chain tongs, evidence *held* sufficient to warrant a finding that the tongs were defective and that the defects could have been discovered by proper inspection.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

3. EVIDENCE (§ 195*)—DEMONSTRATIVE EVIDENCE—EXHIBITS.

In an action by a servant injured by the breaking of chain tongs, the admission in evidence of an artificial reproduction of the broken pin of the tongs for the purpose of illustrating the testimony of witnesses to the accident was not error.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 680; Dec. Dig. § 195.*]

Appeal from Trial Term, Richmond County.

Action by John McKeon against the Proctor & Gamble Manufacturing Company. From a judgment for plaintiff and order denying new trial, defendant appeals. Judgment and order affirmed.

See, also, 154 App. Div. 740, 139 N. Y. Supp. 805.

Argued before JENKS, P. J., and BURR, CARR, RICH, and STAPLETON, JJ.

Frank Verner Johnson, of New York City, for appellant.

Don. R. Almy, of New York City (William S. Evans, of New York City, on the brief), for respondent.

STAPLETON, J. The action is brought by an employé against his employer to recover damages for personal injuries. His complaint is so framed as to have applied to the action the benefits of the Labor Law relating to the liability of employers for injuries sustained by persons in their employ. Consol. Laws, c. 31; Laws 1909, as amended by Laws of 1910, c. 352.

[1, 2] The casualty occurred on the 14th day of February, 1911. The question that primarily arises is whether the accident was the result of the breaking of a defective pin in the chain attached to the tongs, or whether, the chain being sound, the accident was the result of excessive strain induced by the plaintiff. If there was a defective pin, then arises the further question whether the defect was discoverable by either casual or elaborate inspection.

---

The plaintiff's evidence is to this effect:

The plaintiff was a pipe fitter of 18 years' experience. He had been in the employment of the defendant about 3 months and 2 weeks at the time of the casualty. On the day of the casualty he was engaged in fastening hangers from which to suspend iron pipe for the transmission of lye in defendant's factory on Staten Island. While attempting, with the aid of machinery, to detach a "T" from two old pieces of iron piping, the chain of a pair of Vulcan chain tongs broke, and his hand and arm were drawn into the machinery. He sustained serious injury.

The chain of the chain tongs is composed of a serious of outer and inner metal links; the outer links being held rigidly by metal pins; and the inner links revolving on the same metal pins and forming a more or less flexible chain. The chain has a backward and forward but no lateral movement.

Needing chain tongs that morning, the plaintiff went to the store room and gave Williams, the storekeeper, a written order for them. That was the method pursued by all employés who needed tools or material. Williams gave him a pair of tongs. Plaintiff thought they were worn a little—they were worn—and he asked Williams to give him a better pair. Williams said they were the only tongs he had in the storeroom and that plaintiff would have to take them or give up the job. After looking at the tongs, he thought they were strong enough for the work he had in mind. If he had not thought so he would not have taken them. He had not any knowledge by which to tell whether the chain tongs that he used were worn and defective. The tongs given to him looked worn. They were not worn down, but they appeared to have been worked quite a lot. The ends of the pins, outside, were worn down. In all his experience he had never seen chain tongs break, although he had seen them lying broken. It was not a common practice among steam fitters, when they saw anything wrong with a tool that they had, to point out, themselves, what was wrong and bring the tool to the proper place and have it repaired. When he said the chain tongs were worn, he did not, as a matter of fact, of his own knowledge, know whether they were worn or not. He looked at them. He thought that if the storekeeper had a better pair it would be better to get them. During the course of his work he never had occasion to inspect pipe tongs. He did not know how to do it.

Williams, the storekeeper, when asked whether he had observed anything in connection with the pins or links of the chain tongs, replied that he could not see in between the links because that was impossible. Nothing in connection with the tongs attracted his attention. The chain wobbled. There was a wobbly motion in the pins.

Gunning, a fellow workman, came upon the scene shortly after the accident. He picked up the broken chain and saw the broken pin. There were two pieces in the outside links. He looked at those two pieces for a second. The center of the pin was not there; there was no center to it. The pin was worn, shiny, and the other half was broken. One half of the pin was shiny from being worn. There was no flaw that he saw, only part of it looked shiny and the other part looked rough —one part was smooth and the other part rough. The part that was

worn was between the inside link and the outside end link. The shiny or worn part of the pin would be the inside part. The part that he saw had two outside links, and the two ends of the pin were sticking out of the outside links. No break appeared in the outside links. He saw one of the inside links lying on the floor, but did not examine it. The two outside links had been torn away from the two inside links, and the two ends of the pin were in those two outside links, but the part between the two ends had gone. The broken ends indicated to him that the pin was broken and worn. Half of it looked as if it was broken out. Half of it was shining, worn, shining from being worn. It was shiny, and he assumed it was shiny from being worn. When he said that one half of the pin was worn and shiny and the other half was broken, he meant, by one half, the diameter, the area, around the pin, the circumference.

George H. Ward, engineer and machine shop director, and Elias Marshall, consulting engineer, testified that there was a customary and well-recognized method of inspecting Vulcan chain tongs with a view of determining whether or not any of the pins were wearing. They described the method. Ward testified that such inspection would disclose to what extent lost motion had accumulated in each link and whether there was excessive wear. From that examination, excessive wear, if it existed, would be apparent.

Marshall testified that there was no method of inspection which would manifest a fracture in the pin itself. The pin was hidden and the inspection would give only the lost motion in the links; but that would indicate that the pin had some wear, that it was worn down, that it was smaller in diameter at the bearing point, or that the middle links were worn. If there was a break in the pin but no thinning, the inspection would not determine that. That could only be determined by knocking the pin out. But if there was a difference in the size of the pin in one spot as compared with another spot, that difference, and its extent, would be shown by the inspection.

Defendant made the contention that the accident was the result of an excessive strain placed upon the tongs by the plaintiff. Evidence was given by one Bolton, a consulting engineer, that the breaking strain of a new chain was 14,300 pounds, or, in other words, that a force of 14,300 pounds, applied to a new chain, would break it right through the links. In answer to a hypothetical question, reciting the actions and manipulations of plaintiff and another workman at the machine, he testified that the strain thereby produced would bring a pressure of more than 15,000 pounds—a pressure sufficient to break the chain.

There was evidence that the pin broke in the center; that the ends of the pin attaching to the outside links, after the break, were worn and "shiny"; that there was a well-known method of inspection which would have disclosed a worn condition; and that with that method, or any other method of inspection, the plaintiff was not familiar.

The plaintiff, on a former trial, received a judgment, from which an appeal was taken to this court. We reversed the judgment because the evidence upon the trial wholly failed to establish that the defect was of such a character that the defendant could be charged

with negligence in not discovering and remedying it. We also held that there was reversible error in the trial court's ruling upon a request to charge, submitted by the defendant. We said then, and repeat now, that it is established by the evidence that the chain tongs which broke may be deemed a part of defendant's plant. McKeon v. Proctor & Gamble Mfg. Co., 154 App. Div. 740, 139 N. Y. Supp. 805. We think the jury upon the trial we are reviewing were authorized, by the evidence which we have recited, to find that there was a defect in the chain tongs; that the defect could have been discovered by the master in the exercise of proper care and inspection; and that the failure to exercise that care was actionable negligence.

[3] The defendant asserts that the trial court committed reversible error by admitting in evidence, in the form of a model, an artificial reproduction of the broken pin at the point of breakage. The record reads:

"Q. Mr. Gunning, I show you this small piece of metal, and I call your attention to the face of the pin that is unburred, and I ask you if that face of that pin is a fair and correct representation of what you saw with respect to the pin that was broken at the time that you have heretofore testified about?

"Mr. Johnson: Now, I object to that as improper, incompetent, immaterial, and irrelevant, as showing the witness something which it is conceded, as I understand, was not involved in this accident at all, and it calls upon him to state—to draw a comparison and state conclusions without having any sufficient or proper foundation or having made any sufficient or proper foundation upon which to pass any such comparison or such conclusion, that he is wholly incompetent to form any proper opinion or conclusion therefrom.

"The Court: Objection overruled.

"Mr. Johnson: I take an exception.

"Q. Is it or is it not? A. Yes, sir.

"Q. It is? A. (No answer.)

"Mr. Almy: I offer it in evidence.

"Mr. Johnson: I object to it upon the ground—the same grounds.

"The Court: It is received in evidence. Objection overruled.

"Mr. Johnson: I take an exception.

"(The piece of metal referred to is received and marked in evidence Plaintiff's Exhibit No. 7.)

"Q. What do you say with reference to the broken part of the other end of the pin with respect as to whether or not that is a fair and correct representation of it?

"Mr. Johnson: I object to that as improper, incompetent, irrelevant, and immaterial.

"The Court: You make the same objection as before.

"Mr. Johnson: And the further ground, upon the ground that he has not testified that he saw both ends.

"The Court: He does testify to having seen both ends, I think, in part, and you may be right as to your contention regarding the last trial. I will let you argue that all to the jury.

"Mr. Johnson: I will take an exception."

The court, later upon the trial, said:

"And let the record further show that I have admitted that piece of metal in evidence only for the purpose of illustrating, so far as it may tend to illustrate, if it does at all, to the jury the testimony of the witness Gunning as to what he meant by half shiny and half broken."

The industry of counsel has not discovered an authority precisely in point, and our research has not been more generously rewarded. The principle, however, upon which a model is received, is well es-

tablished. The fidelity of its resemblance to the material object which it is designed to represent must be authenticated by human testimony. It is immaterial who prepared it if it be properly verified. It must be evidence of a relevant fact.

Arguments have been presented to the court, pointing out the danger springing from the human tendency unconsciously to attribute undue importance to a material object which purports to represent an alleged condition, and the temptation to reproduce, as favorably as practicable, a condition in the interest of the person offering this kind of evidence. Photographs, maps, diagrams, and models, fairly representative of normal or ordinary conditions, and photographs, maps, and diagrams of unusual and defective conditions, have been admitted, and no reason occurs to us why a truthful mechanical representation of a defective condition should be excluded. The party against whom it is received must rely upon the proper discharge by the trial court of the duty of instructing the jury against misleading or deceptive possibilities. Wigmore on Evidence, vol. 1, §§ 789–797, incl.; Cowley v. People of State of N. Y., 83 N. Y. 464, 476, 38 Am. Rep. 464; Alberti v. N. Y., L. E. & W. R. R. Co., 118 N. Y. 77, 88, 23 N. E. 35, 6 L. R. A. 765; People v. Johnson, 140 N. Y. 350, 354, 35 N. E 604; Coolidge v. City of New York, 99 App. Div. 175, 184, 90 N. Y. Supp. 1078, affirmed sub. nom. Parks v. Miller, 185 N. Y. 529, 77 N. E. 1192; Earl v. Lefler, 46 Hun, 9; Everson v. Casualty Co. of America, 208 Mass. 214, 94 N. E. 459; Berney v. Dinsmore, 141 Mass. 42, 5 N. E. 273, 55 Am. Rep. 445; Pennsylvania Coal Co. v. Kelly, 156 Ill. 9, 17, 40 N. E. 938; American Ex. Co. v. Spellman, 90 Ill. 455; Augusta & Summerville R. Co. v. Dorsey, 68 Ga. 228; State v. O'Reilly, 126 Mo. 597, 603, 29 S. W. 577; People v. Searcey, 121 Cal. 1, 5, 53 Pac. 359, 41 L. R. A. 157; McMahon v. City of Dubuque, 107 Iowa, 62, 67, 77 N. W. 517, 70 Am. St. Rep. 143. See, also, Stewart v. St. Paul City Ry. Co., 78 Minn. 110, 80 N. W. 855.

We think the evidence was properly received. The judgment and order should be affirmed, with costs. All concur.