DRURY v. AMERICAN FRUIT CO.    (No. 6003.)

(Supreme Court, Appellate Division, First Department.    July 10, 1914.)

1. MASTER AND SERVANT (§ 116*)—WAYS, WORKS, AND MACHINERY—"PLANT."
    Under Labor Law (Consol. Laws, c. 31) § 200, subd. 1, as amended by Laws 1910, c. 352, providing that when personal injury to an employé in the exercise of due care is caused by any defect in the ways, works, machinery, or plant of the employer, the employé shall have the same

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

remedy as if not an employé, the word "plant" should receive a liberal construction, and will include a skid consisting of planks fastened together by iron cleats, extended from a store platform to the floor of a car for use in removal of barrels.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*

For other definitions, see Words and Phrases, vol. 6, pp. 5400, 5401; vol. 8, p. 7755.]

2. MASTER AND SERVANT (§ 278*)—ACTION FOR INJURY—SUFFICIENCY OF EVIDENCE—DEFECTIVE APPLIANCES.

Evidence, in an action under Labor Law (Consol. Laws, c. 31) § 200, subd. 1, as amended by Laws 1910, c. 352, giving a servant injured by any defect in the ways, works, machinery, or plant of the employer the same remedy as if he were not a servant, *held* to show that a skid, part of the plant, used to unload barrels from a car to a store platform, was not unsuitable or defective.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

3. MASTER AND SERVANT (§ 281*)—ACTION FOR INJURY—SUFFICIENCY OF EVIDENCE—INSTRUCTIONS.

Evidence, in an action under Labor Law (Consol. Laws, c. 31) § 200, subd. 2, as amended by Laws 1910, c. 352, making a master liable for the negligence of a person in his service, intrusted with superintendence, or authority to direct another servant in the performance of his duty, *held* not to show that plaintiff was not aware of the danger incident to unloading heavy barrels from a car by means of a skid, or that defendant's manager had failed to give him necessary instructions.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 987–996; Dec. Dig. § 281.*]

Appeal from Trial Term, New York County.

Action by John R. Drury against the American Fruit Company. Judgment for plaintiff, and defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, DOWLING, and HOTCHKISS, JJ.

Edward P. Mowton, of New York City, for appellant.

G. Washbourne Smith, of New York City, for respondent.

LAUGHLIN, J. On the 23d day of January, 1912, the plaintiff, while in the employ of the defendant and in the performance of his duties as a porter in assisting in unloading a barrel of vinegar from a freight car, sustained certain injuries, and this action is brought to recover his damages. The case was tried on the theory of liability under subdivision 1 of section 200 of the Labor Law (Consol. Laws, c. 31) for a defect in defendant's plant, and liability for the negligence of a person in the service of the defendant intrusted with superintendence or with authority to direct, control, or command the plaintiff in the performance of his duty under subdivision 2 of said section in assigning him to work on a defective skid.

The defendant's place of business was at 501 West street, which runs north and south, borough of Manhattan, New York, and it was engaged in the business, among other things, of selling vinegar. The defendant had been accustomed to receive consignments of vinegar in

barrels delivered in cars on a siding in the street in front of its place of business. The plaintiff had been in defendant's employ about two months and one week. It was part of his duty to assist in unloading and handling the barrels, and he had been performing such duties from the time he entered defendant's employ. There was a platform about 30 feet long and 4 feet wide extending over the sidewalk in front of defendant's place of business. When a car was to be unloaded, it was left standing on the siding opposite this platform. The floor of the car was about on a level with said platform. The door of the car was about 5½ feet in width, and as the car stood on the siding it was about over the curb. The defendant furnished a skid 19 feet in length and 34 inches in width, consisting of three two-inch planks fastened together by iron cleats, to be extended from the platform over the sidewalk, a distance of about 18 feet, to the floor of the car for the purpose of removing the barrels. On the upper surface of the skid there was a track lengthwise of the skid, formed by two strips of wood each about one inch wide and 1½ inches thick and 7 or 8 inches from the outer edge, designed for the purpose of rolling the barrels thereon. The barrels were about 3 feet 3 inches in length, with a maximum diameter of 2 feet, and when filled with vinegar they weighed between 400 and 500 pounds. The car which was being unloaded at the time of the accident contained 4 rows of barrels standing on end lengthwise of the car, and on top of them boards or planks were extended 7 or 8 inches apart lengthwise of the car to protect the bilges of the barrels of the upper tier from injury from the chimes of the barrels of the lower tier, and upon these were four other rows of barrels on their sides lengthwise of the car, with the exception that directly opposite the door in the upper tier there were two rows of barrels on their sides crosswise of the car. It was necessary to remove from 10 to 14 of the barrels in the upper tier before any of the barrels in the lower tier could be taken out on account of the fact that the planks supporting the upper tier rested on them. There was no room to stand on the floor of the car until some of the barrels in the lower tier were removed.

Shortly prior to the accident, two other porters in the employ of the defendant, Richard Phelan and Maurice Charles, opened the door of the car and removed five or six barrels from the upper tier. Charles then remained in the car on the planks over the lower tier for the purpose of rolling the barrels to the door. At the direction of one Grippenstein, who was employed by the defendant as a shipping clerk and had no authority to give the direction, the plaintiff went to the assistance of Phelan in lifting the barrels from the edge of the upper tier down onto the skid and rolling them onto the platform. In doing this they stood on the skid at the edge of the car, the plaintiff standing on the north side with his right side toward the car, and Phelan was standing on the opposite side of the car and facing him. In removing a barrel from the upper tier to the skid they lifted and slid it off onto their knees and then lowered it to the skid and turned it at right angles to the skid and rolled it on the track to the platform.

The plaintiff testified that he had had experience in assisting in unloading barrels before from the upper tier in a car, but not when it

became necessary to stand on the skid, and that he had had considerable other experience in lifting and handling filled barrels; that on this occasion they had lowered one or two barrels without difficulty, and that he was injured while they were unloading the second or third one; that they ordinarily took hold of the chimes of the barrel with one hand at either end and slid it off between them, easing the weight on the edge of the lower tier and on their knees next to the car, until the outer end touched the skid; that he stood on the skid with his right foot inside or south of the northerly rail of the skid, and his left foot outside or north of the rail, and that his right knee was between the barrel they were lowering and one of the barrels in the lower tier; that as the barrel "was coming down it seemed to crowd me coming over, and it crowded me before I could just—just crowded me right off the big skid, and I fell on the sidewalk, and the barrel fell right over on top, glancing off my leg and cutting the two toes right off"; that the skid did not fall or break; and that he used all his strength in attempting to hold the barrel back.

Phelan testified that he put his left hand on top of the barrel and his right hand on the bottom—evidently meaning on the chimes at the upper and lower ends—that he stood with his right foot on the skid outside the rail and not between the rails and with his back braced against the edge of the door and his left knee "in the car door, * * * on the edge, where a door closed," and his left leg was "in at the edge" of the car door at the end of the skid; that "the barrel fell just about when we brought it on our knees, to let it down"; that it was difficult to describe how the accident happened; and that plaintiff fell off the skid and he could not hold the barrel alone. Plaintiff testified that pursuant to the direction given by Grippenstein he went out to Phelan on the skid and told him that he had never done this work before and suggested that it would be better to take a few of the lower tier barrels out first in order to leave a space on the floor of the car on which to stand, but that Phelan said, "No, we will take these few barrels from the top down first"; and that he and Phelan then started to lift the barrels from the upper tier down onto the skid. Phelan testified that plaintiff made no suggestion with respect to the manner in which the work should be done, but that plaintiff asked him if he wanted any help, and that he replied, "Yes, if you can do it," and that plaintiff said that he could, and that they then started to lift the barrels down. Defendant's manager testified that he had general charge, but did not look after the details, of unloading, which was left to Phelan and Charles. When plaintiff was employed, according to his testimony, he was directed to do as Charles and Phelan told him, and Charles was directed to instruct him "what to do." There is no other evidence with respect to any direction or instruction from either Charles or Phelan with respect to this work. The court instructed the jury that, if the skid was defective in that it was not suitable for the performance of the work in this manner, then the defendant was responsible for Phelan's act in directing the plaintiff to work on it. That is the only theory of negligence submitted to the jury.

[1] Under the statute before it was amended by chapter 352 of the

Laws of 1910, which added the words "or plant," we held that skids supported by a wooden horse put up and taken down by the employés when necessary and used for the removal of meat and provisions from a refrigerator car was not a "way" within the contemplation of the statute as it then existed. Heiser v. Cincinnati Abattoir Co., 141 App. Div. 400, 126 N. Y. Supp. 265. On an appeal to the Court of Appeals after a new trial on the same case, that court agreed with this court on that point, but reversed on the ground that, since it appeared that the defendant had on other occasions borrowed for such use skids which were manifestly more safe, evidence to that effect would have presented a question for the jury as to whether the skids used on the occasion of the accident were safe. Heiser v. Cincinnati Abattoir Co., 205 N. Y. 379, 98 N. E. 747. The word "plant" is very comprehensive, and as used by the Legislature in this statute it should receive a liberal construction. Under such a construction, the skid in question was doubtless a part of defendant's plant. Lipstein v. Provident Loan Society, 154 App. Div. 732, 139 N. Y. Supp. 799; McKeon v. Proctor & Gamble Co., 154 App. Div. 740, 139 N. Y. Supp. 805.

[2] There is no evidence in the case at bar, however, that skids of any other construction were in general use by others or had ever been used by the defendant. It appears by the uncontroverted evidence that the defendant had conducted its business in this manner by the use of like skids for at least 11 years; and there is no proof that its attention was ever drawn by an accident or otherwise to the sufficiency or suitableness of the skids. As already stated, the plaintiff testified that he suggested to Phelan that they remove some of the barrels from the lower tier first; but, manifestly, that could not be done, for they were held down by the planks supporting the barrels in the upper tier. It was not contemplated by the men engaged in this work that it would become necessary for them to change their foothold while lowering the barrels, and it needs no evidence to show that an attempt to step about while supporting such a great weight would be fraught with danger, no matter how wide the skid might have been. The only evidence with respect to the manner in which the accident happened has been stated, and it does not warrant an inference that, if the skid had been wider, the plaintiff could have moved his foot and thus been able to control the barrel, and there is no evidence that he attempted to shift the position of his foot. The reasonable inference from the evidence is that the accident was due to the fact that the plaintiff did not take a proper position in attempting to lower the barrel, or that he was not strong enough to control it. We recognize, of course, that the suitableness of an appliance for the work may become and often is a question of fact for the jury; but we think that the evidence should afford some reasonable basis for a finding against the defendant on that point before the plaintiff is entitled to go to the jury.

[3] The case was not submitted to the jury on the theory that the plaintiff was not aware of the danger incident to doing the work in this manner or that the defendant had failed to give him necessary instructions; but, even on these points, we think that there was no evidence to take the case to the jury. He knew quite as well as his

employer that if he and Phelan were unable to control the barrel there was danger of an accident, and he also knew that the skid was not furnished for the purpose of either walking or moving about on it while supporting the weight of the barrel. We are of opinion therefore that upon no theory did the evidence require the submission of the case to the jury, and that the defendant's motion for a dismissal of the complaint at the close of the evidence should have been granted.

It follows that the judgment and order should be reversed, with costs, and the complaint dismissed, with costs. All concur.

---

### In re AMIDON. (No. 6009.)

(Supreme Court, Appellate Division, First Department. July 10, 1914.)

WILLS (§ 818*)—CONSTRUCTION—LEGACIES—COSTS.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 2112; Dec. Dig. § 818.*]

Appeal from Surrogate's Court, New York County.