BERT WILEY, Respondent, *v.* THE SOLVAY PROCESS
COMPANY, Appellant.

*Negligence — master and servant — whether failure to furnish
a punch constitutes a defect in the "plant" within meaning of
section 200 of Labor Law and whether servant assumed risk,
questions for jury.*

1. The word "plant" in its ordinary acceptation when used in con-
nection with and relating to a business includes everything other
than supplies and stock in trade necessary and requisite to the car-
rying on of the business. A plant is defective when any part of it
is not in a proper condition for the purpose for which it was
intended, and it is also defective when it is so incomplete that the use
of the plant is dangerous by reason of the failure to furnish reason-
ably necessary parts for the purpose for which it is used.

2. In an action under the employers' liability provision of the Labor Law, as amended (Cons. Laws, ch. 31; amd., L. 1910, ch. 352), to recover for personal injuries alleged to have been occasioned plaintiff by reason of the failure of defendant to furnish him a certain punch which plaintiff asserts constituted a defect in the condition of defendant's " ways, works, machinery and plant," *held,* that the questions whether defendant's plant was defective by reason of its failure to supply such punch and whether the plaintiff assumed the risk of injury therefrom were properly left to the jury.

*Wiley* v. *Solvay Process Co.,* 157 App. Div. 943, affirmed.

(Argued May 6, 1915; decided July 13, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 16, 1913, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, far as material, are stated in the opinion.

*H. Duane Bruce* for appellant. The failure to furnish a punch to plaintiff for punching holes in hoops was not a defect in defendant's plant. (*Davis* v. *Plant,* 138 N. Y. Supp. 145; *G. P. R. R. Co.* v. *Brooks,* 84 Ala. 138; *Clements* v. *A. G. S. R. R. Co ,* 127 Ala. 166; *Southern R. R. Co.* v. *Moore,* 128 Ala. 434; *Coffee* v. *N. Y., N. H. & H. R. R. Co.,* 155 Mass. 21; *Birmingham Furnace & Mfg. Co.* v. *Gross,* 97 Ala. 220; *O'Keefe* v. *Brownell,* 156 Mass. 131; *Hamilton* v. *Groesbech,* 19 Ont. 76; *Howe* v. *Mark Finch Co.* L. R. [17 Q. B. Div.] 187.)

*A. Lee Olmsted* for respondent. The defendant was negligent in failing to provide a punch for the plaintiff's use. (*Lipstein* v. *P. L. Co.,* 154 App. Div. 732; *McKeon* v. *P. & G. Mfg. Co.,* 76 Misc. Rep. 599; *Drury* v. *A. F. P. Co.,* 163 App. Div. 509; *Miele* v. *Rosenblatt,* 164 App. Div. 604; *Kerwin* v. *L. I. R. R. Co.,* 157 App. Div. 898; *Nappa* v. *Erie R. R. Co.,* 195 N. Y. 176; *Heiser* v. *Cincinnati Abattoir Co.,* 205 N. Y. 379.)

CHASE, J. This is an action by an employee against an employer to recover for personal injuries incurred while engaged in his employment.

The plaintiff had been employed by the defendant for eight months before the accident in packing barrels with baking soda, and putting in and fastening the heads of the barrels. The barrels were furnished to him without having the top hoop fastened. The heads of the barrels were furnished in from two to six pieces. Plaintiff, in the work of heading the barrels, put the pieces constituting the head of the barrel in place, with the edges fitted into a groove made to receive them near the top and inside of the barrel staves, and then he put on the top hoop and drove it down tightly over the staves. The hoops were made of thin rolled steel and each hoop had seven nail holes punched or drilled in it. It was the duty of the plaintiff to drive an ordinary wire nail through the hoop and barrel staves into each end of each piece of the barrel head. Where more than seven nails were required it was necessary for the plaintiff to make the additional holes in the hoop and his only means of doing so was by forcing the nails through the hoop as a part of driving them through the barrel staves into the ends of the pieces constituting the barrel head. He was not furnished with any tool, drill or punch to make the nail holes through the hoop. In driving the nails through the hoop they sometimes bent, and if they bent they would then frequently fly from his fingers as they were struck by the hammer. He testified that he had not been at his work more than a day before he ascertained that nails would sometimes fly from his fingers when he attempted to drive them through the hoop and that he thought it was dangerous. Prior to the accident the plaintiff had injured his hands at different times in trying to drive nails through a hoop and at one time about four weeks before the accident a man was struck on the nose with a nail that so flew from a workman's fingers, and the plaintiff testified that he had seen others hit in

the same way.   A short time before the accident he was attempting to drive a nail through a hoop and the nail flew and the hammer struck his fingers.   He testified that at that time he said to the assistant foreman then in charge of the work, " Why don't you furnish me a punch so I can make a hole before trying to drive a nail through."   He further testified that the foreman "Kind of laughed at me; he said there is no.time for punching; go on with the work."   He was not furnished with a punch.   On the morning of the accident, soon after he commenced work, and while heading a barrel, he attempted to drive a nail through the hoop, and at the first blow with his hammer it bent and flew from his fingers and struck him in one of his eyes, destroying its sight.   It is for such injury that this action is brought.

The punch which the plaintiff desired should be furnished to him for his use in his work is a tool.   The defendant had a rule as follows: " The company provides sound, strong and perfect tools and materials which any workman can obtain on application to his foreman if he wants to use such tools and material for his work.   No employee is permitted to work with any tool or material which is defective but is required to apply to the foreman for proper tools or material."

The court submitted the case to the jury and said: " It is simply a question of fact for you, gentlemen, to say whether or not the defendant was negligent in failing to provide a suitable punch.   I will restrict the issue to that in the case. · I do not think there is any question of negligence so far as furnishing the hoops were concerned without sufficient punctures.   I will restrict it to simply the question of providing a suitable punch."

The rule at common law is that an employee who continues in the work of the employer with full knowledge of the dangers incident thereto assumes such risks.   This rule has. not been changed by the Employers' Liability Act (Labor Law, secs. 200-204) unless notice is given as

provided by that law and the employee is entitled to recover under the terms of the act. (*Collelli* v. *Turner*, 215 N. Y. 675; *O'Neil* v. *Karr*, 110 App. Div. 571; *S. C.*, after retrial and nonsuit granted, 115 App. Div. 881; affd., 190 N. Y. 509; *Bushtis* v. *Catskill Cement Co.*, 128 App. Div. 780; affd., 198 N. Y. 548; *Curran* v. *Manh. R'way Co.*, 118 App. Div. 347. See *Gmaehle* v. *Rosenbergh*, 178 N. Y. 147; *Clark* v. *N. Y. C. & H. R. R. R. Co.*, 191 N. Y. 416; *Arnold* v. *National Starch Co.*, 194 N. Y. 42; *Gombert* v. *McKay*, 201 N. Y. 27; *Jackson* v. *Greene*, 201 N. Y. 76; *Seaboard Airline Railway* v. *Horton*, 233 U. S. 492; *Southern Railway Co.* v. *Crockett*, 234 U. S. 725.)

This action is brought under the Employers' Liability Act (Labor Law) and notice was served as in the act provided. Plaintiff's claim to a recovery rests entirely upon the assertion that a punch as described is a part of the ways, works, machinery and plant of the defendant, and that the failure to furnish a punch was a defect in the condition of such ways, works, machinery and plant. If the failure to furnish the punch was a defect in the condition of the ways, works, machinery and plant of the defendant, the question whether the plaintiff assumed the risk of injury therefrom was properly left to the jury. (Labor Law, section 202.)

In determining under all the circumstances of this case whether a jury might say that a punch should have been furnished as a part of the defendant's plant, and that a failure to furnish the punch was a defect in the condition of the plant, it is necessary to consider and interpret the statute.

Its meaning must primarily be determined by the language of the act itself. In determining its meaning the particular mischief which the act was designed to remedy and the history of the period and of the act itself may be considered.

The statutory meaning of a word or phrase must be

gathered from the purpose for which the law containing it was enacted. (*Caddy* v. *Interborough Rapid Transit Co.*, 195 N. Y. 415.)

Such considerations are simply aids, however, and the conclusion reached as to its meaning must be from the language of the act as chosen and used by the legislature in connection with relevant facts relating to the purpose sought to be accomplished by it.

It is a matter of common knowledge that the Employers' Liability Act was intended to protect and safeguard the interest of employees. The act, including what is now sections 200–204 of the Labor Law, was first enacted in 1902 (Chapter 600, Laws of 1902), but as then enacted the section corresponding to section 200 of the Labor Law did not include the word "plant."

The words used in the act of 1902, namely, "ways works and machinery," did not include everything furnished to the employee for his use in the business of the employer. (*Nappa* v. *Erie R. R. Co.*, 195 N. Y. 176, 182; *Heiser* v. *Cincinnati Abattoir Co.*, 141 App. Div. 400; *S. C.*, 205 N. Y. 379, 382.) It probably did not include hand tools although such tools, or at least many of them, are absolutely essential to constitute a plant.

The word "plant" was added to that section by chapter 352 of the Laws of 1910. It cannot be reasonably doubted that the change was made for the benefit of employees and to make certain that everything reasonably required for the safety of an employee in the conduct of the master's business would be included in the statute by the use of the word "plant."

The purpose of the amendment of 1910 was to include among the things required of the employer something not included in the words of the act as it existed prior to the amendment. It was made with knowledge of the construction given to the act as it existed prior to 1910, and it seems to have been intended to make the statute broad, liberal and comprehensive. The word "plant"

in its ordinary acceptation when used in connection with and relating to a business includes everything other than supplies and stock in trade necessary and requisite to the carrying on of the business. It includes in the language of LINDLEY, L. J. (*Yarmouth* v. *France*, L. R. [19 Q. B. Div.] 647, 658): "Whatever apparatus is used by a business man for carrying on his business — not his stock in trade which he buys or makes for sale; but all goods and chattels, fixed or movable, live or dead, which he keeps for permanent employment in his business."

This subject was considered with great care and ability in an opinion by the late Justice BURR, of the Appellate Division, second department (*Lipstein* v. *Provident Loan Society of New York*, 154 App. Div. 732, 738), to which I refer without repeating the statements and arguments therein made by him from which he concludes: "That anything (as distinguished from persons), animate or inanimate, and whether fixed or movable, that is regularly used in the conduct of the business of an employer, and that is neither ways, works nor machinery, and without which, or something of a similar character, such business could not be carried on in the usual and ordinary manner, may be deemed to be a portion of the plant connected with such business."

Chain tongs used by a pipefitter employed by the defendant in its business have been held to be a part of the defendant's plant. (*McKeon* v. *Procter & Gamble Mfg. Co.*, 76 Misc. Rep. 599; *S. C.*, 154 App. Div. 740; *S. C.*, 162 App. Div. 784.)

A rope furnished by the defendant for ordinary use to secure the loads placed upon its wagons is held to be a part of the defendant's plant. (*Kerwin* v. *L. I. R. R. Co.*, 157 App. Div. 898.)

It has been held by the first department, speaking by LAUGHLIN, J. (*Drury* v. *American Fruit Product Co.*, 163 App. Div. 509, 513) that "The word 'plant' is very comprehensive, and as used by the legislature in this stat-

ute should receive a liberal construction. Under such a construction the skid in question (a skid placed with one end on a railroad car and the other end on a platform by the sidewalk and used for unloading barrels) was doubtless a part of defendant's plant." This was said after referring to the *Heiser Case* (*supra*) and asserting that it was there held that a skid supported by a wooden horse was not a " way," and after calling attention to the fact that the *Heiser* case was decided prior to the amendment of 1910.

If the punch which the plaintiff wanted and solicited from the foreman was a tool proper and requisite and reasonably necessary for his use under all the circumstances, it was not, as appears by the rule quoted, the duty of the plaintiff to furnish it, but the failure to provide it was the fault and neglect of the defendant.

A plant without tools and appliances would be useless as such. A plant is defective when any part of it is not in a proper condition for the purpose for which it was intended and it is also defective when it is so incomplete that the use of the plant is dangerous by reason of the failure to furnish reasonably necessary parts for the purpose for which it is used.

We quote again from the words of LINDLEY, L. J., in *Yarmouth* v. *France* (*supra*): "I take defect to include anything which renders the plant, &c., unfit for the use for which it is intended, when used in a reasonable way and with reasonable care."

We think the record disclosed a question of fact as to whether the defendant's plant was defective by reason of its failure to supply the plaintiff with a punch as we have already detailed and that the judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., WERNER, HOGAN, CARDOZO and SEABURY, JJ., concur; MILLER, J., takes no part.

Judgment affirmed.