DELAWARE, L. & W. R. CO. v. PERROTTA.

(Circuit Court of Appeals, Second Circuit.   November 14, 1916.)

No. 22.

1. MASTER AND SERVANT ⬚⟾107(8)—NEW YORK EMPLOYERS' LIABILITY ACT—
    CONSTRUCTION—"PLANT."
        Under the New York Employers⁴ Liability Act (Consol. Laws, c. 31, §§
    200–204), as amended by Laws 1910, c. 352, which gives an employé a
    right of action for an injury received while in the exercise of due care
    "by reason of any defect in the ways, works, machinery or plant" of
    the employer, owing to the negligence of the employer, or of any one in
    his service intrusted with the duty of seeing that his ways, works, ma-
    chinery, and plant are in proper condition, as such statute is construed
    by the state courts, a skid or gangplank furnished by a railroad company
    for use in unloading freight cars, one end of which is placed on the floor
    of the car and the other on the platform or pier, is a part of the "plant"
    of the company.
        [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ⬚⟾107(8).
    For other definitions, see Words and Phrases, First and Second Series,
    Plant.]

2. MASTER AND SERVANT ⬚⟾107(8)—NEW YORK EMPLOYERS' LIABILITY ACT—
    CONSTRUCTION.
        An employer cannot avoid the liability imposed by such act by his
    omission to supervise the condition of his ways, works, machinery, and
    plant, and by imposing upon its employés the responsibility which the
    act imposes upon him.
        [Ed. Note.—For other cases, see Master and Servant, Dec. Dig.
    ⬚⟾107(8).]

3. MASTER AND SERVANT ⬚⟾107(8)—MASTER'S LIABILITY FOR INJURY TO SERV-
    ANT—DEFECTIVE PLANT.
        Plaintiff, with other longshoremen, under a foreman, was employed by
    defendant railroad company in loading and unloading its cars at a. pier
    to which the cars were brought on floats.   His gang was directed by the
    foreman to finish unloading a car, which had been partly unloaded by
    another gang.   The latter had left the door open, with a skid in place,
    reaching from the car door to the pier, over which the goods were moved
    on trucks.   As plaintiff was passing down with his truck, the skid fell,
    and he was severely injured.   Owing to the action of the tide, which
    varied the height of the floats, it was necessary to safety that the skids
    should be made fast to the car, and for that purpose they were in general
    equipped with ropes.   Defendant kept a number of skids on the pier for
    the use of the workmen, who made their own selections and put them
    in place.   There was evidence warranting a finding that the skid in
    question was not so equipped, and was not fastened to the car, and that
    plaintiff, whose gang did not make the selection, did not know such

⬚⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

facts. *Held* that, under the statute, defendant was not relieved from liability by the fact that it supplied skids in good condition, and that a judgment for plaintiff was sustained by the evidence.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ◎107(8).]

In Error to the District Court of the United States for the Eastern District of New York.

Action at law by Carmine Perrotta against the Delaware, Lackawanna & Western Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The action was commenced originally in the Supreme Court of the state of New York for the county of Kings. The case was, however, removed by the plaintiff in error to the United States District Court for the Eastern District of New York, on the ground of diversity of citizenship.

A. J. McMahon, of New York City, for plaintiff in error.
Adolph Ruger, of Brooklyn, N. Y., for defendant in error.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. This is an action by an employé against an employer. It is brought under the Employers' Liability Act of the state of New York (Consol. Laws, c. 31, §§ 200–204), and is for the recovery of damages for personal injuries incurred by the plaintiff and alleged to have been caused solely by reason of the negligence of the defendant.

[3] The plaintiff is a longshoreman, who was employed by the defendant in loading and unloading cars at its pier in the North River in the borough of Manhattan, city of New York. The cars were brought to the pier on lighters or floats holding 10 or 12 cars according to their size. The plaintiff had been working for defendant on the dock prior to this accident for about 4 or 5 months. He was so engaged trucking freight out of the cars on the day of the accident, December 24, 1913. On the afternoon of that day the plaintiff and his gang were directed by the foreman who had charge of the loading and unloading of the freight at this pier, and who had general superintendence of the plaintiff and his gang, to go to work and remove the freight from the car where the accident occurred. According to the testimony of some of the witnesses they found the door of the car open and the car partially unloaded by another gang which worked there in the morning. The skid was in place and the men went to work as ordered.

The cars were unloaded by means of ordinary two-wheeled hand trucks. The plaintiff was the first one of his gang to start from the car across the skid with a load, and it was his first trip across it. There was quite a steep incline from the car to the floor of the pier, and plaintiff was pulling the hand truck behind him; that being the only way the truck could be handled under the conditions. He started down the skid, and as his truck got upon it the skid fell, and with it the truck, box, and plaintiff. The box, which weighed about 600 pounds, fell upon his leg and inflicted a severe and painful injury. As a result he was confined to his bed for 58 days, and was unable to work for about 4

months. At the time of the trial, which was nearly 2 years after the accident, he claimed he still suffered pain from the injuries he received.

The plaintiff claims that the injuries he suffered were due solely to the negligence of the defendant in failing to provide him with a safe place in which to work. It is said that the skid was not provided with ropes, and so was not fastened either to the pier or lighter, with the result that, when the lighter rose by reason of the rise of the tide, the skid slid from the lighter to the pier.

The defendant claims that it is not responsible for the fact that a defective skid was used, if an unfit one was in fact used, as it was selected and put in place by the men who used it, and that if its position changed after it was placed in position, it was because the tide had risen, and that the plaintiff should have known of the situation, and if he went to work without having the skid so secured that it would not fall when the tide rose it was his own fault, and that he is, therefore, not entitled to recover.

The plaintiff denies that he or his gang selected or put in place the skid, or that he had at the time he used it any knowledge of its defective condition. He asserts that it was selected by and put in place by a different gang in the forenoon, and that in the afternoon he and his gang were instructed to use it in unloading, and that he was obeying that instruction, given by a superior, when the accident happened.

There was a conflict in the testimony as to whether the skid in use by the plaintiff at the time of the accident was or was not provided with ropes. Two witnesses testified that it was equipped with the ropes, and that they were fastened to the car. This testimony was contradicted by the plaintiff, who said the skid had no ropes, and in this he was corroborated by three other witnesses, who were certain that there were none. The question was for the jury, and we must accept their verdict as conclusive of the fact that this particular skid had no ropes. The evidence shows that there were some 35 or more skids on the pier, and that all of them except the one in question were provided with ropes from 4 to 5 feet in length, by which they could be tied fast to the beams and the cross-bars under the car to keep the skid in position.

The evidence also shows that when a gang was instructed to unload a car they went and got a skid from among those the defendant had provided, and that they took any one they thought suitable, and fastened it by the ropes to the car, so that it would not be made insecure by the changes in the tide.

[1] The New York Liability Act provides that:

"When personal injury is caused to an employé who is himself in the exercise of due care and diligence at the time:

"1. By reason of any defect in the condition of the ways, works, machinery, or plant, connected with or used in the business of the employer which arose from or had not been discovered or remedied owing to the negligence of the employer or of any person in the service of the employer and intrusted by him with the duty of seeing that the ways, works, machinery, or plant, were in proper condition;

"2. By reason of the negligence of any person in the service of the employer intrusted with any superintendence or by reason of the negligence of any person intrusted with authority to direct, control or command any employé

in the performance of the duty of such employé. The employé  *  *  *  shall have the same right of compensation and remedies against the employer as if the employé had not been an employé of nor in the service of the employer nor engaged in his work."

If the injury was due to a defect in the condition of the ways, works, machinery, or plant furnished the plaintiff by the defendant, and the defect was not discovered or remedied owing to the carelessness and negligence of the defendant, or of a person in its employ intrusted with the duty of seeing to it that the ways, works, machinery, or plant were in proper condition, then the plaintiff was entitled to recover under the act provided he was not guilty of contributory negligence.

The New York Court of Appeals in Nappa v. Erie R. R. Co., 195 N. Y. 176, 182, 88 N. E. 30, 21 L. R. A. (N. S.) 96 (1909), held that a skid used in unloading freight cars, one end of which was placed on the floor of the car and the other on the platform which opened onto the floor of the freight house, was no part of the ways, works, or machinery under the Employers' Liability Act of 1902 (Laws 1902, c. 600).

The words "ways, works and machinery" were not inclusive of everything furnished to the employé for use in the business of the employer. But in 1910 the act was amended (Laws 1910, c. 352), and the word "plant" was added, making the provision read "ways, works, machinery or plant." As thus amended the act was construed in Wiley v. Solvay Process Co., 215 N. Y. 584, 590, 109 N. E. 606, 608 (1915), the court saying:

"The word 'plant' in its ordinary acceptation, when used in connection with and relating to a business, includes everything other than supplies and stock in trade necessary and requisite to the carrying on of the business. It includes in the language of Lindley, L. J. (Yarmouth v. France, L. R. 19 Q. B. Div. 647, 658): 'Whatever apparatus is used by a business man for carrying on his business—not his stock in trade which he buys or makes for sale; but all goods and chattels, fixed or movable, live or dead, which he keeps for permanent employment in his business.'"

Then the court added:

"A plant without tools and appliances would be useless as such. A plant is defective when any part of it is not in a proper condition for the purpose for which it was intended, and it is also defective when it is so incomplete that the use of the plant is dangerous by reason of the failure to furnish reasonably necessary parts for the purpose for which it is used."

And in Drury v. American Fruit Product Co., 163 App. Div. 509, 513, 148 N. Y. Supp. 675, decided after the amendment of the act above referred to, a skid, placed with one end on a railroad car and the other end on a platform by the sidewalk and used for unloading barrels, was held to be a part of the "plant."

The skid being a part of the plant owned by the employer the question was for the jury to say whether its defective condition arose from or had not been discovered or remedied owing to the negligence of such employer, or of some person in his service intrusted with and exercising superintendence. The question was submitted accordingly, and the jury charged that:

"If he had the right, on the facts as I have stated the issues, to suppose that the defendant had been keeping track of that gangway, or if from past

experience he should not have expected that it had been left there for the men to take care of themselves, and if, therefore, it was the defendant's duty either to take that gangplank down, have it inspected or see that it was safe before longshoremen were allowed to go and use that gangplank without further instructions, why then he would make out a case, and you would have to consider how much would compensate him for the accident which occurred to him on this day."

It is sufficient for the purpose of this case to say of this instruction that it contains nothing of which the defendant has a right to complain. The New York act expressly provides that the contributory negligence of the injured employé is a defense to be pleaded and proved by the defendant.

The defendant pleaded contributory negligence as a defense, and the charge of the court made it plain that if the plaintiff had been guilty of contributory negligence there could be no recovery. The jury were charged that there could be no recovery "if this accident occurred through any fault or negligence on the part of the plaintiff, from some matter as to which he might have been careless or negligent, and the accident have been prevented, then the plaintiff cannot recover." The court could not upon the testimony have decided that the plaintiff was guilty of contributory negligence as matter of law. And the action of the jury is conclusive upon the question of fact.

It has been held in New York that the Employers' Liability Act has no application when the servant himself prepares the place to work. Pratt v. McKee, 147 App. Div. 72, 131 N. Y. Supp. 763; Mattson v. Phœnix Const. Co., 135 App. Div. 234, 120 N. Y. Supp. 566. But the jury in the case at bar was instructed that if the skid was placed in position by the plaintiff, or any of the gang in which he was working, the plaintiff could not recover. The verdict of the jury has determined, therefore, that the plaintiff did not prepare the place to work. And there is testimony in the record which justifies the conclusion which the jury reached. The plaintiff testified, as before stated, that the skid had been placed in position in the morning by another gang which had worked there in unloading freight. In this he was corroborated by other witnesses, who testified that none of the plaintiff's gang had had anything to do with putting the skid in place.

No action can be maintained under the act unless notice of the time, place, and cause of the injury is given to the employer within a time specified, and unless action is commenced within a time specified. That notice was given and action commenced within the time required is not disputed. The purpose of the Employers' Liability Acts in general, as we understand them, is to make the master absolutely responsible for the proper discharge of certain personal duties which he owes to servants entering his employment, and from which he cannot relieve himself except by performance. Atchison, T. & S. F. R. Co. v. Seeley, 54 Kan. 21, 37 Pac. 104.

[2] Under these acts "the injured servant is given a right to recover damages in the cases enumerated, although the abnormal conditions which caused his injury may have been created or suffered to continue through the negligence of a fellow servant." Labatt's Master and Servant, volume 5, page 5147. It is true that under the New York

act, as we have seen, the contributory negligence of the employé will defeat his recovery: But we cannot assent to the proposition that, because the defective plank was put in place by a gang to which the plaintiff did not belong, and because it was taken out of a number of others not defective, the practice being to allow the men to select their own skid and put it in position, therefore the employer is relieved from the duty imposed by the act. The employer cannot, in our opinion, avoid the liability which the act imposes by its omission to supervise the condition of its ways, works, machinery, or plant, and by imposing upon its employés the responsibility which the act imposes upon it. This skid was a part of the defendant's plant, and was out of order, and its condition was unknown to the plaintiff at the time. That another gang had selected it, and put it in place, and used it cannot relieve the employer from his responsibility to this plaintiff for a defective condition of which he had no knowledge, and which a jury had found was due to the employer's negligence.

The assistant foreman who had the immediate supervision of the plaintiff testified that he left it to the gangs to get the skids from among those the defendant provided, and to put them in place, but .he admitted that it was a part of his duty to see that the men used them properly. He was asked whether, if he saw anything about a gangplank that looked dangerous and might endanger the freight, it was his business to see it made straight; and he said that it was, and that it was the duty of the men to obey his instructions. He was asked, "Did you ever inspect this particular gangplank?" and he replied, "I don't think I ever did." He also testified that he made no examination of it after the accident. If the skid had been provided with ropes, and the plaintiff and his gang had been instructed to fasten it by the ropes to the car, and had failed to do so, the omission would have been a detail of the work, and not an act of superintendence. See Pratt v. McKee, supra. But such was not this case.

If the plaintiff is entitled to recover, and we think he is, the verdict, which is only for $500, certainly cannot be deemed excessive.

Judgment affirmed.

⊜⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.