LEONELLO VALENTI, an Infant, by ANTONIO VALENTI, His Guardian ad Litem, Appellant, v. HENRY MESINGER and FREDERICK MESINGER, Respondents.

ANTONIO VALENTI, Appellant, v. HENRY MESINGER and FREDERICK MESINGER, Respondents.

First Department, December 1, 1916.

Master and servant — negligence — trial — contradicting witness by written statement — charge — knowledge of foreman that plaintiff was performing certain duties — erroneous charge as to negligence of fellow-servant — proper ruling impaired by subsequent erroneous charge — parent and child — father's action for loss of services — liability of employer to parent governed by Employers' Liability Act — stare decisis — construction of foreign statutes.

Where, in an action to recover for personal injuries brought under the Employers' Liability Act, the plaintiff's attorney called as a witness an employee of the defendants and merely proved by him that he had been subpœnaed by the defendants and was at the place of the accident and made a written statement respecting the accident to the defendants and to the plaintiff's counsel as well, so as not to make the witness a witness for the plaintiff in any other respect, and the defendants, in examining said witness, elicited testimony to the effect that after the accident the witness found the elevator which caused the accident to be in good condition, it was error for the court to exclude a written statement made to the plaintiff's counsel by the witness wherein it appeared that the handle of an electric switch on the elevator was not in place, offered for the purpose of contradicting the witness.

Where it appeared that although the plaintiff's usual duties consisted in putting springs in bicycle saddles, he had on a great many occasions been called upon by another employee to assist him in removing rubbish from the factory by means of the elevator which caused the injury, and it further appeared that the defendants' foreman was present on occasions when the plaintiff was doing said work, it was error to refuse to charge that if the plaintiff had been engaged in removing rubbish for the length of time testified to by him and the foreman had knowledge of it, that he was performing said work "within the authority of the defendant," for the circumstances were equivalent to a direction from the foreman to do the work.

As such action was brought under section 200 of the Labor Law, as amended by chapter 352 of the Laws of 1910, which made the defendants liable for any negligence of any person in their employ intrusted with any superintendence or with authority to direct, control or command an employee in the performance of his duties, it was error to

charge, under the old rule, to the effect that if there were no act of direction and supervision over the plaintiff's performance of his work the negligence of a fellow-servant would be a defense.

Where the aforesaid erroneous charge was the last instruction given to the jury at their own request, the error was not harmless because in a previous charge the court had stated the proper rule of law, for the jury had a right to consider that the court, by the last instruction, intended to change the ruling.

The liability of an employer to the father of an infant employee, who is injured through negligence, based on the parent's loss of services, is founded, like the action of the infant himself, on the Employers' Liability Act and the parent is not restricted to a recovery under the former rules of the common law.

Decisions construing the statutes of other States which are similar to our own, while entitled to great weight, are not binding upon the courts of this jurisdiction with respect to the construction of our own statutes.

APPEALS by the plaintiff in each case, Leonello Valenti and Antonio Valenti, from judgments of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 11th day of February, 1915, upon the verdicts of a jury, and also from orders entered in said clerk's office on the 8th day of February, 1915, denying the plaintiffs' motions for new trials made upon the minutes.

*Meyer D. Siegel*, for the appellants.

*E. Clyde Sherwood*, for the respondents.

LAUGHLIN, J.:

The actions are brought by the infant plaintiff to recover damages for injuries alleged to have been sustained through the negligence of his employers, and by his father to recover for the loss of the services of his son. In the month of March, 1913, the infant, who for brevity will be referred to as the plaintiff, came to this country from Italy, and in April entered the employ of the defendants, who were engaged in manufacturing bicycles at East One Hundred and Forty-fourth street and Austin place, in the borough of The Bronx, New York. The principal work to which he was assigned and which he customarily performed was putting springs in the saddles of bicycles. On the 11th day of August, 1913, he was sixteen years and nine months of age, and on that day while in the employ of the defendants at their factory he sustained the injuries to recover for which

First Department, December, 1916. [Vol. 175.

these actions were brought. There were some sixty or sixty-five men and boys employed in the factory under the supervision of a general foreman with a sub-foreman on each floor. The plaintiff worked on the ground floor, and Charles Patto was his foreman. One Stanislau, called "Sister" by the witnesses, was also employed under the same foreman. On Saturdays, for some time before the accident, the plaintiff had been assigned by his foreman to the duty of sweeping up the rubbish and putting it in cans. It was the duty of Stanislau to remove the cans of rubbish from the various floors on Mondays, using the freight elevator for that purpose. The freight elevator had two inclosed sides and the other two sides were open with gates at each floor. These gates were held in place in grooves — one at each end — and when lifted up they were designed to be held in place by cams or catches; but according to the evidence adduced in behalf of the plaintiff the cams or catches on the ground floor were broken so that in loading or unloading the elevator it was necessary for some one to hold the gate up. On the morning of the accident, which was a Monday, Stanislau called the plaintiff to assist him in loading a can of rubbish onto the elevator, and directed plaintiff to raise and hold the gate to enable him to put the can onto the elevator. The plaintiff raised the gate and while in the act of holding it, with one foot on the platform of the elevator and one on the floor, according to the evidence presented in his behalf, the elevator started up lifting him out of position and the gate came down and he was injured. The evidence is conflicting with respect to the use of the elevator. That given in behalf of the plaintiffs tends to show that any one was at liberty to use it who had occasion so to do; and on the part of the defendants evidence was given tending to show that certain employees on each floor only were authorized to use it. The elevator was operated by electric power, applied and controlled by means of a switch which was inside the elevator and was designed to be operated by a handle which, when in a vertical position, left the current on, and when in a horizontal position cut the current off. This switch, however, was merely used to turn on and to cut off the power; and to operate the elevator it was necessary to have the power on and to reach through an opening made in

the side of the elevator by the removal of a panel and to pull a cable in the elevator shaft at the side of the elevator to which the switch was attached. With the power on, the elevator could be moved by pulling the cable at any floor, and it was customary to leave the power on when the elevator was not in use so that it might be used from any floor, and when the elevator was standing at any floor and was in use it was evidently the custom to have the power off so that it could not be operated from another floor, for that would endanger the safety of those who were using it. The evidence on the part of the plaintiffs tended to show that the handle of the switch was off at the time of the accident and had been off for some days so that the power could not be turned off. Stanislau testified that owing to this condition the elevator, when in use by him before the accident, had frequently been moved from other floors without notice or warning; and that he brought this to the attention of his foreman several days before the accident, warned the foreman that an accident would result, and that the foreman promised to attend to the matter. This evidence was controverted by the defendants. Stanislau, according to his testimony, was under sixteen years of age at the time of the accident. Defendants claim that the plaintiff was a volunteer in assisting Stanislau as that was no part of his duty. Stanislau testified that his foreman had authorized him to call on any one to assist him in doing this work; and that pursuant to this authority he had requested the plaintiff to assist him, and that the plaintiff had assisted him in like manner on fifteen or twenty former occasions. The plaintiff testified that he had so assisted Stanislau on thirty or forty former occasions. The plaintiffs did not in their complaints specifically charge negligence with respect to the maintenance of the gates or the elevator; but they charged the defendants with negligence in maintaining and operating the elevator without sides or inclosures, and without proper rules, signals or regulations with respect to the operation thereof, and in causing the same to be operated by inexperienced and reckless persons; and charged them and their superintendent with negligence in directing and causing the plaintiff and another person in their employment to use and

First Department, December, 1916.        [Vol. 175.

operate the elevator in removing refuse and garbage knowing that the plaintiff and his co-employee, with whom the plaintiff was required to use the elevator, were "infants lacking in age and experience for such work and uninstructed as to the dangers and risks involved therein." On the objection being raised on the trial that no negligence was charged with respect to the condition of the switch or the handle of the switch, counsel for the plaintiffs conceded that he did not offer the evidence on that point to charge the defendants with negligence on account of the condition of the switch but as bearing upon the negligence charged against the defendants in requiring the plaintiff and the other infant to work on the elevator. Although the court first excluded evidence offered by the plaintiff with respect to the switch and handle it was finally received and there was a sharp conflict in the evidence with respect to whether or not the handle was on the switch and with respect to whether the elevator was in proper working order at the time of the accident. The defendants called to the witness stand a clerk in the employ of the plaintiffs' attorney, and asked if he knew a man by the name of Cinelli, who was in the court room and was asked to stand up for identification; and the witness was asked if Cinelli did not go out to lunch that day with the plaintiff; and whether or not the plaintiffs' attorney had a written statement from Cinelli with respect to the accident. The witness answered all of those questions in the negative, and he was then asked to look at the folder of the plaintiffs' attorney to ascertain and see if there was not a statement from Cinelli there. On objection being interposed counsel for the defendants stated that Cinelli had been pointed out by one or two witnesses as having been present at the accident and that his purpose was to show that Cinelli had been seen "by the other side, and that they have a statement from him;" and he conceded that he had a statement from Cinelli. Counsel for the plaintiffs then conceded that he also had a written statement from Cinelli, whereupon counsel for the defendants said: "I want to show the reason why I do not call him as a witness." The court then stated that neither side was under any obligation to call Cinelli, and that, if desired, the jury would be

instructed that the failure to call the witness would raise no presumption against either side. The attorney for the plaintiffs then called Cinelli to the stand and showed by him that he had been subpœnaed by the defendants; that he was on the ground floor at the time of the accident; and was the first one who came to the plaintiff's assistance, and that he made a statement in writing to the defendants with respect to the accident a week or so after it occurred. This was all the attorney for the plaintiffs asked the witness. Counsel for the defendants then took the witness and showed by him that the statement which he made to the defendants was true, and he offered the statement in evidence but it was excluded. In answer to further questions by counsel for defendants the witness testified that he remembered the condition of the elevator at the time of the accident; that at that time it was in the same condition as when he saw it before the accident, and that he did not "see anything the matter with it." He also stated in express terms that it was "in good condition" at the time of the accident, but on motion the words "good condition" were stricken out. The witness was then asked by the attorney for the plaintiffs if there was a switch in the elevator at the time of the accident, and he answered that he did not remember, whereupon the attorney for the plaintiffs asked: "You said that the elevator, as far as you could remember was in good condition?" to which the witness replied: "It was in good condition." The witness admitted that he had made a statement to plaintiffs' attorney about the accident. The attorney for the plaintiffs then asked the witness whether there was anything in that statement about the switch and on objection being interposed the court ruled that he might contradict but he could not impeach the witness because he had made him his own. The attorney for the plaintiffs thereupon said that his purpose was to contradict the witness and then, at the suggestion of the court, he attempted to refresh the recollection of the witness by having the witness read the paper; but he was unable to elicit the fact that the handle was off the switch, which he evidently claimed was in the statement. He then offered the statement in evidence and on objection interposed by counsel for

defendants it was excluded, and an exception was duly taken. I am of opinion that that ruling was clearly erroneous. The plaintiff had not made the witness his own; he had merely asked some questions, having no bearing on the litigated issues, but to show the witness' connection with the defendants and to remove any effect upon the jurors caused by the action of counsel for the defendants in calling the clerk of the plaintiffs' attorney and so questioning him with respect to the witness Cinelli. It must be assumed that the statement so excluded would have tended to contradict the witness and to controvert the evidence given by him with respect to the condition of the elevator concerning which he had not been interrogated by the plaintiffs' attorney. Although the plaintiffs had failed to plead negligence with respect to the condition of the elevator, they had pleaded negligence in requiring the infants to use it, and that necessarily involved an inquiry into the safety of the elevator. (See *Oldfield* v. *N. Y. & Harlem R. R. Co.*, 14 N. Y. 310.) If the witness stated in his written statement that the handle of the switch was off at the time of the accident that would have tended to destroy the evidence given by him to the effect that he saw nothing out of order with respect to the elevator at the time of or prior to the accident.

As already observed there was a sharp conflict in the evidence with respect to whether the plaintiff was a volunteer or was engaged in the performance of his duty at the time of the accident. The court at the request of the attorney for the plaintiffs, and with the consent of counsel for the defendants, instructed the jury that if they believed that the plaintiff was asked by " Sister," at the direction of the foreman, to assist him in doing the work, " then he was doing that particular work under the foreman's orders." The attorney for the plaintiffs then asked the court to instruct the jury that if the plaintiff " was doing this work of removing the garbage during the period of time that he testified he did it, and the foreman had knowledge of it, then he was doing that work within the authority of the defendant." The court declined so to charge and an exception was duly taken. I am also of opinion that this was also error. No witness testified that the foreman saw the plaintiff doing this work at any time,

but if the plaintiff had taken part in this work on former occasions to the extent testified by him, as the jury might have found, they would have been warranted in finding that this was known to the foreman whose duties were on the same floor, and if so, I think it would follow as matter of law that the plaintiff was lawfully engaged in the service of the defendants at the time of the accident. Although the plaintiff's customary duties were putting springs in the saddles of bicycles, he had been assigned by his foreman to other duties on Saturdays; and if on Mondays for a long period of time he had regularly, under the eyes of his foreman, at the request of Stanislau, who was also working under the same foreman, assisted in the removal of the rubbish and garbage, which he had put into the cans on Saturdays and this required the use of the elevator and the elevating of the gate, that, I think, was equivalent to a direction from the foreman to do the work. After having been sent out the jury sent in a written request for instructions as follows: "If we believe that 'Sister' was told by the superintendent Patto to use his own helper in clearing and carrying out the garbage, then can 'Sister' be called a proper representative of the owner? Would the owner or employer be liable for his act?" The court had instructed the jury that the right of the father to recover depended upon the common law while the right of the infant to recover rested upon the Employers' Liability Act. The jury were brought back into court, and they were again reminded of this distinction between the liability in each action, and the court then further instructed them as follows: "Now, as far as the boy's case is concerned, in answer to that question, I will say yes and no, in this way: That as far as the selection of one of these men by 'Sister,' if you find that Patto gave him that direction, the master would be bound by the selection, but after selection it makes no difference whether the act was committed by Patto himself or by 'Sister' himself; if it were not an act of direction and supervision, the master would not be bound by it, under the Employers' Liability Act, and the negligence of a fellow servant would be a defense, unless the negligence was committed in the execution of an act of direction or superintendence." The attorney for the plaintiffs excepted to these instructions with the exception of the

instruction that the defendants would be bound by the selection of the infant by "Sister" if the foreman authorized it. The instructions to which the exception was taken are manifestly erroneous. The court here charged the old rule of law which had been changed by the amendment to section 200 of the Labor Law (Consol. Laws, chap. 31; Laws of 1909, chap. 36) by chapter 352 of the Laws of 1910 which took effect September 1, 1910, and which is known as the Employers' Liability Act. Under the changed rule of liability at the time of the accident the defendants were answerable to the plaintiff for any negligence of any person in their employ "intrusted with any superintendence," or "intrusted with authority to direct, control or command any employee in the performance" of his duties. (See *Pelow* v. *Oswego Construction Co.*, 162 App. Div. 840.) These erroneous instructions were evidently given inadvertently for in the main charge the court had instructed the jury in accordance with the law as so changed; but counsel had a right to assume and the jury must have understood that by these final instructions the court intended to change the instructions previously given. The jury would have been warranted in finding that "Sister" was intrusted with superintendence and with authority to direct, control and command the plaintiff in performing the work of removing the rubbish and garbage. (See *Proctor & Gamble Co.* v. *Williams*, 183 Fed. Rep. 695; *Pennsylvania Steel Co.* v. *Lakkonen*, 181 id. 325; *Larkin* v. *Burke*, 212 id. 148; *Proctor* v. *Rockville Centre M. & C. Co.*, 205 N. Y. 508; *Cain* v. *Thompson-Starrett Co.*, 153 App. Div. 414; *Hurley* v. *Olcott*, 134 id. 631; affd., 198 N. Y. 132; *Rodzborski* v. *American Sugar Refining Co.*, 151 App. Div. 395.) It is doubtful whether under the complaint and bill of particulars the plaintiff could recover for the negligence of "Sister;" but that was not the theory upon which the instructions were given. I am of opinion that the errors which I have pointed out were seriously prejudicial to the rights of the plaintiffs and require a new trial in both actions. Since, however, there is to be a new trial it is proper that we should express our views on another point applicable only to the father's action. At the close of the evidence the court, in ruling on a motion made for the dismissal of the complaint,

announced that the father's action would be submitted to the jury under his rights at common law; and that he had no right under the statute. To these rulings the attorney for the plaintiff duly excepted, and, thereupon, on motion of counsel for the defendants the court struck from the record in the father's action the notice under the Employers' Liability Act; and to that an exception was duly taken. The court then directed that counsel in addressing the jury confine their arguments to the theory that the liability to the father was only under the common law and that the son only was entitled to the benefits of the statute. These rulings present a question on which, so far as we have been able to find, there is no precedent in this jurisdiction. Section 200 of Labor Law, at the time of the accident, provided, so far as material to this question, that when personal injury is caused to an employee who is himself in the exercise of due care and diligence at the time by a defect in the condition of the ways, works, machinery or plant, owing to the negligence of his employer or of any person intrusted by the employer with the duty of seeing that the ways, works, machinery or plant were in proper condition or " By reason of the .negligence of any person in the service of the employer intrusted with any superintendence or by reason of the negligence of any person intrusted with authority to direct, control or command any employee in the performance " of his duty, "The employee, or in case the injury results in death, the executor or administrator of a deceased employee who has left him surviving a husband, wife or next of kin, shall have the same right of compensation and remedies against the employer as if the employee had not been an employee of nor in the service of the employer nor engaged in his work." The theory upon which the learned trial court ruled that the father was not entitled to the benefit of these statutory provisions is that by the express terms of the statute the benefit is confined to the employee in case the injury does not result in death. In the case of an injury to an infant the extent of the liability of the wrongdoer is precisely the same as in the case of an injury to an adult; but in the case of the infant the liability for *part* of the damages is to the parent, upon the ground that the person who injured the child owed to the parent the same duty

as he owed to the child for the reason that the parent is entitled
to the services of his minor child and is under obligation to pro-
vide for his support and maintenance including necessary
medical care and attendance.   (See *Cuming* v. *Brooklyn City
R. R. Co.*, 109 N. Y. 95; *Dollard* v. *Roberts*, 130 id. 269;
*Sorensen* v. *Balaban,* 11 App. Div. 164; *Drew* v. *Sixth
Avenue Railroad Company*, 26 N. Y. 49; 6 Thomp. Neg.
350, 458.)   The failure of the employer to perform a duty owing
to the infant, whether it be a duty owing at common law or
by virtue of some statutory enactment, with the resulting
injury, gives rise to a cause of action in favor of the infant to
the extent that he is authorized to recover the damages; and I
see no room for distinction between actions brought by the
parent to recover the damages he has sustained depending upon
whether the breach of duty of which he complains was imposed
by common law or by a statute imposing it generally with
respect to employees.   At common law whenever the infant
has a cause of action for a personal injury to him which
incapacitates him from performing services for his parent the
parent likewise has a cause of action.   The question depends,
I think, upon whether by this legislation a new cause of action
has been given to the injured employee and to him only.
Although the statute does not in express terms create or
give a cause of action in favor of the employee, yet, since
it to some extent imposes new duties on the employer and
extends the remedy which the employee had at common law
by providing that he shall have the same right of compensa-
tion and remedies against the employer as if he had not been
an employee, and there are provisions in the statute requir-
ing the service of notice to obtain the benefit thereof and
referring to actions brought thereunder (See Labor Law
[Employers' Liability Act], §§ 201, 202, as amd. *supra*), the
courts have often referred to the Employers' Liability Act as
conferring rights of action in addition to remedies afforded by the
common law.   (See *Kleps* v. *Bristol Manufacturing Company,*
189 N. Y. 516; *Gmaehle* v. *Rosenberg*, 178 id. 147, 151; *Proctor*
v. *Rockville Centre M. & C. Co.*, 205 id. 508.)   There were,
however, conflicting decisions with respect to whether, where a
liability at common law and under the statute were pleaded

together, the plaintiff should be required to separately state and number them as separate causes of action (See *Uss v. Crane Co.*, 138 App. Div. 256; *Welch v. Waterbury & Co.*, 136 id. 315; *Acardo* v. *New York Contracting & Trucking Co.*, 116 id. 793. See, also, *Payne* v. *N. Y., S. & W. R. R. Co.*, 141 App. Div. 833); but in *Payne* v. *N. Y., S. & W. R. R. Co.* (201 N. Y. 436) the Court of Appeals resolved those conflicts by deciding that one who sustains personal injury through the negligence of another, whether such negligence be predicated upon a breach of duty at common law or an omission or violation of a statutory duty, has but a single cause of action, and that is one for *negligence*, and that, therefore, in the same count he may allege any number of grounds of liability, at common law or under the statute or both, and the same doctrine was reannounced in *Marion* v. *Coon Construction Co.* (157 App. Div. 95; affd., 216 N. Y. 178). In *Payne* v. *N. Y., S. & W. R. R. Co.* (*supra*) Judge WERNER, writing for a unanimous court, said that the view he expressed that there was but a single cause of action was " entirely consistent with the statement that the statute may have given an additional or new cause of action, for that is literally true in all cases where the common law affords no relief, and where the only right to recovery is created by the statute." It must, of course, be presumed that the Legislature was aware at the time this legislation was originally enacted (Laws of 1902, chap. 600) that if an infant had a cause of action for personal injury the parent also had a cause of action arising out of the same facts to recover part of the damages. It is not, I think, reasonable to suppose that the Legislature intended to increase the duty which an employer owes to an infant and to afford a remedy for breaches of such duties which would not exist at common law and withhold the benefit thereof from the parent to whom at common law the employer of the infant owed the same duty as to the infant himself. This is emphasized by the fact that the benefit of the statute was extended to an action brought by the personal representative of an employee where the injuries resulted in death and for the benefit of the parent if he survived his child. If the legislation enacted fails to extend the duties and the remedies in favor of the parent as well as of

the infant then it is manifest that it must have been an inadvertent omission. I am of opinion that the statute is susceptible of the construction that its benefits were intended for the benefit of those who sustained damages through the failure of the employer to perform the duties enjoined upon him by the statute. If the cause of action be *one for negligence,* as was declared by the Court of Appeals, evidently with deliberation, in *Marion* v. *Coon Construction Co.* (*supra*), then the father as well as the son has a cause of action for the same negligent act, the same breach of duty; for in that view of the case the negligence consists in a breach or an omission of duty and it is quite immaterial whether the duty arises under the common law or was imposed by the statute. Neither the Employers' Liability Act nor the Labor Law, in which it is now embodied, contain any express provision with respect to the construction to be given thereto by the courts. The general rule doubtless is that the Employers' Liability Act, being in derogation of the common law, is to be strictly construed (*Williams* v. *Citizens' Steamboat Co.*, 122 App. Div. 188; *O'Neil* v. *Karr*, 110 id. 571; *Bertolami* v. *United Engineering & Contracting Co.*, 132 id. 804, reversed on another point in 198 N. Y. 71); but this does not mean that a narrow, literal construction must be placed upon its provisions; and in *Drury* v. *American Fruit Product Co.* (163 App. Div. 509) we held that the word "plant," as used in the statute, was to be broadly construed to give effect to the manifest intent of the Legislature; and that view was by express reference approved by the Court of Appeals in *Wiley* v. *Solvay Process Co.* (215 N. Y. 584, 590). No authority is cited by either counsel in support of his contention on this proposition. The only decisions we have found having any material bearing on the point are *Woodward Iron Co.* v. *Cook* (124 Ala. 349); *Dobra* v. *Lehigh Valley Coal Co.* (250 Penn. St. 313); *Gibson* v. *Kansas City Packing Box Co.* (85 Kan. 346), and *Henry* v. *Missouri, K. & T. Ry. Co.* (158 Pac. Rep. 857). In *Woodward Iron Co.* v. *Cook* (*supra*), a statute (Ala. Code of 1886, § 2590 *et seq.;* now Ala. Code of 1907, § 3910 *et seq.*, as amd. by Ala. Gen. Acts of 1911, No. 456) which rendered an employer liable where an employee was injured in the instances enumerated " ' to answer in damages to

such servant or employe ' if he survives the injury, otherwise, to his personal representative," the court construed the statute as conferring the cause of action and held that it should be strictly construed and that it did not authorize an action by the parent for damages sustained by an infant son. That case is, however, I think, distinguishable upon the ground that here the cause of action is not conferred by the statute which merely imposes additional duties and indirectly wipes out the negligence of a coservant as a defense by providing that the employee shall have the same right of action as if he were not an employee. In *Gibson* v. *Kansas City Packing Box Co.* (*supra*) it was held that the parent of an infant employee who was injured could not recover of the employer for a failure to comply with an act requiring safeguards for the protection of employees. The court applied the rule of strict construction, and held that the benefits of the statute were confined to the infant and in case of death to his personal representative, although the court recognized the rule that at common law the employer of an infant owes the same duty to the parent to exercise ordinary care for the safety of the infant that he owes to the infant himself. A recent decision of the same court in *Henry* v. *Missouri, K. & T. Ry. Co.* (*supra*) supplied a more liberal construction to a statute (Kan. Gen. Stat. 1909, § 4992) giving a right of action " to the party injured for the direct damage sustained " in consequence of any violation of or willful failure to comply with the provisions of a mining law by the owner, lessee or operator of a coal mine. In that case the court, in construing these provisions of the Coal Mining Act, which was entitled " An act to provide for the health and safety of persons employed in and about the coal mines of Kansas," held that a parent could maintain an action for the loss of services of his minor son, resulting from the defendant's failure to comply with the statute, which provided for the safety of the persons employed in the mines. And evidently to meet the objection that the damages sustained by the parent were not " direct " damages within the purview of the statute the court, expressed the opinion that the purpose of the Legislature in including the words " for the direct damage sustained " was not clear, and instead of giving them an effect which would limit the statute the court declared them surplus-

age.   In *Dobra* v. *Lehigh Valley Coal Co.* (*supra*) the Anthracite Coal Mine Act (Penn. Laws of 1891, p. 176, No. 177) in express terms (p. 207, art. 17, § 8) gave the right of action " to the party injured " against the owner or operator of a mine " for any direct damages he may have sustained thereby," and it was held that the damages sustained by the parent of an infant injured by a violation of the statute were not *direct* damages within the purview of the statute.   It might well be held, adopting the view of the court in *Henry* v. *Missouri, K. & T. Ry. Co.* (*supra*), that the provisions of our statute to the effect that the employee, or, in case of his death, his personal representative, shall have the same remedies as if he were not an employee, are merely surplusage as applied to this case where the recovery is sought, not by virtue of those provisions of the statute, but by virtue of the provisions rendering the master liable for defects in the ways, works, machinery and plant, and for the negligence of any one in his employ intrusted with superintendence or with authority to direct or command any employee.   Those provisions would preclude the defense of the negligence of a coservant.   Decisions construing statutes of other States, which are similar to ours, while entitled to great weight, are not, even if they were in harmony, binding upon the courts of this jurisdiction with respect to the construction of our own statutes; but the later Kansas decision tends to support the construction which I have given.   It follows, therefore, that the judgment and order appealed from in each case should be reversed and a new trial granted, with costs to appellants to abide the event.

CLARKE, P. J., DOWLING, SMITH and DAVIS, JJ., concurred.

Judgment and order in each case reversed and new trials ordered, with costs to appellants to abide event.   Order to be settled on notice.